In re The **ALISON CORPORATION**, a California Corporation, Debtor.

**CAPITAL MANAGEMENT COMPANY and Palmcrest Company, Plaintiffs,**

v.

The **ALISON CORPORATION**, a California Corporation, Defendant.

**SOUTHWEST BANK**, a California Banking Corporation, La Casa Trust Deed Service, a California Corporation, Plaintiffs,

v.

The **ALISON CORPORATION**, a California Corporation, Defendant.

**Bankruptcy Nos. 80–03393–P, C80–0615–P and C80–0670–P.**

United States Bankruptcy Court, S. D. California.

March 17, 1981.

---

John J. Hargrove of Strauss, Kissane, Davis & Hargrove, San Diego, Cal., for debtor.

Craig O. Correll, Cardiff-By-The-Sea, Cal., specially appearing for J. Warren Beall for Capital Management Co. & Palmcrest Co.

L. Scott McClanahan of Weil & Fritz, Whittier, Cal., for Southwest Bank & La Casa Trust Deed Service.

Darvy Mack Cohan, La Jolla, Cal., for Curtis S. & Judith A. Sword.

## MEMORANDUM OF DECISION

ROSS M. PYLE, Bankruptcy Judge.

On February 18, 1981, the Court announced its decision to dismiss the Chapter 11 bankruptcy case filed by The Alison Corporation ("Alison") pursuant to an oral motion made by Capital Management Co. ("Capital Management") and Palmcrest Co. ("Palmcrest"), creditors. This Memorandum of Decision is intended to further explain the Court's decision.

## FACTS

Alison, the Debtor herein, is a California corporation which was formed shortly before the filing of the Chapter 11 petition. It has two shareholders, James W. Street and Charles Street, and its only asset consists of real property in San Marcos, California, improved with a racquetball facility. Alison has leased the premises to Racquetime Corporation ("Racquetime") which operates the racquetball facilities. That lease is in default and the premises are, and have been during the pendency of these proceedings, closed down.

The Debtor's assets before incorporation were owned by James W. Street and Charles Street individually. They had been part of a joint venture partnership which terminated on or about January 1, 1980, when the Streets bought out their remaining partners. It is uncontradicted that the Debtor was formed for the purpose of filing this Chapter 11 petition without involving the other assets of the two shareholders.

The market value of the racquetball facility is approximately $1,200,000.00. It is encumbered by three trust deeds totaling approximately $954,000.00. There are also 1980–81 real property taxes owing in the approximate amount of $6,500.00. Those are all of the debts listed in Debtor's schedules. There are no unsecured creditors, and no creditors claims have been filed.

The facility is not operating, thus there is no income stream available to the Debtor for the servicing of the outstanding encumbrances against the property. The first trust deed holder, Southwest Bank, and the second trust deed holder, Capital Management and Palmcrest, have filed relief from stay actions (C80–670–P and C80–0615–P respectively).[1] The Debtor argues that the

---

1. Apparently the third trust deed holders have filed for judicial foreclosure in the Superior Court, and seek relief against the Streets individually upon the promissory note to the extent the third may be foreclosed out by senior lien

equity cushion provides adequate protection to these creditors. *See In re San Clemente Estates*, 5 B.R. 605 (Bkrtcy.S.D.Cal.1980); *In re Pitts*, 2 B.R. 476 (Bkrtcy.C.D.Cal. 1980).

## DISCUSSION

The Motion to Dismiss centered upon the question of the good faith of the Debtor in filing its Chapter 11 petition in that it had been formed only two days prior to its filing for the specific purpose of filing to prevent foreclosure. *See In re Fast Food Properties, Ltd. No. 1*, 5 B.R. 539 (Bkrtcy.C. D.Cal.1980), *Matter of Northwest Rec. Activities, Inc.*, 4 B.R. 36 (Bkrtcy.N.D.Ga. 1980). The Debtor argues that there is no lack of good faith since the Streets could have individually filed this Chapter 11 proceeding the same as the corporation.

The creditors, however, argue the proper standard to be considered is the detriment to creditors. By transferring this property to the Debtor, the Streets have shielded all of their business and personal assets from availability for any plan of reorganization. Since the property is not producing any income, there are no funds to service the loans, pay insurance premiums or maintain a burglar alarm system on the premises, whereas if the individuals had filed, funds would perhaps be available for those purposes.

In order to resolve the Motion to Dismiss, the Court has considered the dual underlying policies of the Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*) to determine whether this case is an imposition upon the jurisdiction of the Court.[2]

One basic purpose of the Bankruptcy Code remains the same as was formerly the case under the old Bankruptcy Act. That is to afford the debtor a "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Local Loan Co.*

*v. Hunt*, 292 U.S. 234, 244–245, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1933). Also see *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). This basic purpose has been expressed as giving the debtor a "fresh start".

In a chapter 11 context, this fresh start can be characterized as rehabilitation through the implementation of a plan of reorganization whereby the debtor will emerge as a functioning unit in the economy.

Another main thrust of the bankruptcy system is the orderly amassing of the non-exempt assets of the debtor and equitable, systematic distribution to creditors. *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 514, 15 L.Ed.2d 428 (1965); *Kokoszka v. Belford*, 417 U.S. 642, 645–646, 94 S.Ct. 2431, 2433–34, 41 L.Ed.2d 374 (1974).

In a Chapter 11 context, this is accomplished through the plan of reorganization after it passes the scrutiny of the Court and the votes of any creditor class whose claims or interests are impaired. See 11 U.S.C. §§ 1124, 1126. The debtor or its equity holders are the last category of persons or entities which the code is designed to benefit. 11 U.S.C. § 1129; 5 *Collier on Bankruptcy*, ¶ 1129.03[4][d] (15th Ed. 1980); 11 U.S.C. § 726.

Concededly, the within case was filed solely to obtain the benefit of the automatic stay and to stave off the foreclosing creditors while the Debtor attempts to market the property. This case presents no policy reason to impose the jurisdiction of this Court. There is no unsecured creditor body which should be able to enjoy part of the equity in the property upon distribution. There is no prospect of a fresh start being promoted, since the corporate Debtor has only this single asset. The only reason to continue the stay in effect and keep the case going is so that the principals of the Debtor, *at the creditors' risk*, can retrieve

---

holders. The third trust deed note balance is approximately $150,000.00.

2. For a thorough discussion of these dual purposes see *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1979).

their investment [3] and obtain the appreciation in value of the property. They propose to do this without footing the bill by servicing the debt against the property.

This is not to say there is anything wrong or sinister about the profit or recoupment motive. However, the utilization of the bankruptcy system should not be the method by which to obtain a profit or recoup an investment where a corporate entity is interposed between the investor and the secured creditor body. The parties should instead be left to the free market and their contractual and state remedies.

There is no rehabilitation of the Debtor contemplated nor are there unsecured creditors who will benefit from the equity of the property. Neither of the dual policies of the Bankruptcy Code would be fostered by maintaining this case in Court.

This case should be dismissed since it is an imposition upon the jurisdiction of the Court.

The Debtor has requested that the Court schedule an auction sale of the property since the Debtor has been in negotiation with a prospective purchaser of the property. The Court will allow such an auction sale to take place so long as it does not interfere with the foreclosure process of these creditors. At the hearing it was determined that the creditors could renotice their sales in order to proceed along the foreclosure path. Accordingly, March 19, 1981 at 3:00 o'clock p. m. has been scheduled for the auction sale proposed by the Debtor, which auction sale, if any, will be subject to the approval of the secured creditors and confirmation of the Court. In the absence of such confirmation of sale on that date the stay orders under Title 11 U.S.C. § 362 should be vacated. The Debtor's petition should then be dismissed and the foreclosure sale may take place on or after March 25, 1981.

## CONCLUSION

The above will constitute Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52. Let an order enter accordingly.

---

**3.** This investment is not inconsiderable, since the principals have reduced the original encumbrances by approximately $250,000.00.