### In re CHESMID PARK CORPORATION, Debtor.

**Bankruptcy No. 84–00618–R.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Dec. 13, 1984.

---

H.P. Jack Armstrong, Richmond, Va., for debtor.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court on the motions of the United States Trustee and the Bank of Powhatan to dismiss or convert to Chapter 7 Chesmid Park Corporation's Chapter 11 petition. After notice and a hearing on November 20, 1984 on the stated motions, the Court took the matter under advisement. After deliberation upon the evidence adduced at the hearing, this Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Chesmid Park Corporation ("Chesmid Park"), the debtor, is not a business in the ordinary sense. The apparent purpose of the debtor corporation is to hold legal title to a certain parcel of real estate consisting of approximately ten acres of valuable commercial property in Midlothian, Virginia, until it appreciates in value and then liquidate that asset. The testimony given at the hearing indicated that the land had a value in excess of $684,590. This realty is the debtor's sole asset.

The testimony established that the Bank of Powhatan ("Bank") was given a first deed of trust lien to secure its loan to Chesmid Park in the amount of $35,000 in 1972 on a 2.12 acre parcel of the subject real estate. The Bank of Powhatan loaned additional funds to Chesmid Park in 1975 and consolidated the two loans secured by a new deed of trust for $60,000 on the 2.12 acre parcel and an additional 4.98 acre parcel. John L. Lewis, III ("Lewis") and J. Stanley Whittaker, Jr. were named trustees under the deed of trust. From the time the payments under the $60,000 deed of trust came in default in early 1977, Chesmid Park's total indebtedness to the Bank of Powhatan steadily increased due to the accrual of interest at a rate of prime plus 2 percentage points. At the time of the hearing of this matter, Chesmid Park owed the Bank approximately $130,000.

On March 26, 1980, the president of the Bank of Powhatan sent a letter to John R. Smith, Chairman of the Board of Chesmid Park, notifying the latter that the loans were delinquent and had been so since the early part of 1977. The letter requested that the loans be brought current or the Bank would be forced to foreclose under the deed of trust instruments. Lewis testified that subsequent to the letter, the president of the Bank of Powhatan asked him to institute foreclosure proceedings. Lewis then contacted Smith by letter on April 23, 1980 to discuss the sale of the property. In the ensuing months, it appears that approximately 15 letters were sent back and forth between Lewis and the Bank on the one hand and Smith on the other in an effort to negotiate an amicable solution to the problem. The Bank did not carry to fruition any foreclosure proceedings during this time.

In 1981, an agreement was obtained by Smith to further delay any foreclosure proceedings until March of 1982. The Bank's agreement to delay foreclosure again was not met by any *quid pro quo* attempt on the part of Smith to bring Chesmid Park's loan obligations current on the notes.

In March, 1982, Lewis was again requested by the Bank to institute foreclosure proceedings. Negotiations between the Bank and Smith continued with the Bank again acquiescing several more times in a continuance of the foreclosure. Finally, in the fall of 1982 the Bank decided to foreclose, but only as to the 2.12 acre parcel. The rationale behind selling only a portion of the secured acreage was that the value of the property was such that the proceeds of only a limited portion of the secured collateral would be sufficient to

retire all of Chesmid Park's indebtedness to the Bank. However, foreclosure was delayed again. Smith met with the Bank several times requesting that there be no sale of the acreage until it was subdivided and then sold on a per parcel basis on the assumption that the subdivided parcels would bring a higher price. Smith was successful in persuading the Bank in this regard.

Subsequent to the preparation of a plat dividing the property into lots, Lewis then proceeded with plans to sell the 2.12 acre parcel and scheduled the sale for December 10, 1982. Again at Smith's request, the sale was delayed until January 21, 1983. A sale was finally held on that date and attended by various real estate agents and approximately 80 to 100 interested persons. The result of the sale was that 12 parcels were purchased by four groups. Parcel 1A was purchased by Paul Norman Tapp for $60,000. Parcels 1B, 3A, 2, 5 and 6 were purchased by Vernon Pledger. Parcels 3 and 4 were purchased by Jack McCrocklin and his wife, Mildred E. McCrocklin. Parcels 7, 8, 9 and 10 were purchased by David F. Freeman and G. Robert Waldrop, III. One hundred eighty-five thousand dollars ($185,000) was the total amount of the bids. Coincidental with the sale, the purchasers of eight lots which bordered on proposed Chesmid Drive by contract agreed to pay their proportional interest for the paving of the road which Smith planned to blacktop and Chesmid Park planned to dedicate as a public street. On the other side of Chesmid Drive lay the 4.98 acres pledged in 1975. Behind the 4.98 acres is another four acre parcel which would also be served by proposed Chesmid Drive.

Consummation of the sale was to occur within 90 days of the signing of the contracts. Mr. Freeman, one of the purchasers of lots 7, 8, 9 and 10, approached Smith prior to consummation of the sale about the purchase and was informed by Smith that he would not consummate the sale with respect to lots 7, 8 or 9 unless Freeman paid an additional $3,000 over and above the amount Freeman had bid at the sale. Smith also demanded that the existing easement on lot 10 be relocated, and further, Smith wanted Freeman and Waldrop to give him a fifty-foot easement across lot 10 to serve some of the Smith family's property to the rear of the parcels. The testimony indicated that Smith also went to Jack McCrocklin and told him he could have Vernon Pledger's lots 5 and 6 for an additional $1,000 per parcel. In addition, when Smith became aware that Pledger sought to sell lots 1B and 3A to the Fire Department for approximately a $12,000 profit, Smith made it known that he did not wish to confirm the sale to Pledger as to those parcels.

The possibility that the sale might be consummated became even more remote. Smith did not dedicate or blacktop Chesmid Drive, thus, the purchasers did not want to consummate the sale until this was done. With respect to lots 1B and 3A sold to Vernon Pledger, Smith asked for and received a preliminary injunction in the Circuit Court of Chesterfield County, Virginia enjoining Lewis, the trustee, from conveying the parcels to Pledger. At a subsequent hearing on the merits, that court ruled the sale by Lewis was a valid trustee's sale and the injunction was dissolved. However, in each of the contracts signed by the purchasers, confirmation of the sale was conditioned on approval by the Circuit Court of Chesterfield County, Virginia.

To this date the sale has never been consummated and Chesmid Drive has neither been blacktopped nor dedicated to public use. The cash deposits placed on certain parcels by Freeman, Waldrop, and McCrocklin have been recovered by them. The evidence was that after two years, they no longer desired to go forward with the purchase of the lots.

The Bank of Powhatan decided to hold a new trustee's sale on the 4.98 acres. The Bank advertised the sale of 4.51 acres (4.98 acres minus the fifty-foot strip for the dedication of Chesmid Drive).[1] The advertise-

---

1. Lewis testified that the trustees were not privi-    leged to foreclose on the fifty-foot strip because

ment for the sale ran in the newspaper for two or three weeks. Immediately prior to foreclosure, Chesmid Park filed its petition in bankruptcy. The automatic stay under § 362 of the Bankruptcy Code went into effect preventing the foreclosure.

Chesmid Park filed a plan of reorganization on October 4, 1984. The plan proposes that the debtor remain in possession of the property selling individual parcels over a period of 18 months from the date of confirmation of the plan. The plan also indicates that Chesmid Park has conveyed 0.2 acres of the land to Paul Norman Tapp subject to the Bank of Powhatan's lien in the amount of $54,000. The plan states that the Bank of Powhatan refuses to execute a partial release on the conveyed parcel. In addition, the debtor has an agreement to sell to Tapp an additional 0.5 acres for the sum of $80,000 on the execution of a partial release by the Bank and other existing secured creditors. The debtor proposes to sell the remaining parcels in a like manner one tract at a time. The overall plan contains no classifications of creditors and states that the United States Trustee shall receive as a priority payment 9 percent of all sums received. Although the debtor's plan was filed on October 4, 1984, at the time of the hearing on November 20, 1984, no disclosure statement had been filed.

The United States Trustee brought to the attention of the Court the fact that the debtor has been persistently dilatory in filing reports as required by the Consent Order dated September 18, 1984. In addition, the U.S. Trustee indicates that no status report has been filed by the debtor as required. Finally, counsel for the Bank of Powhatan brought it to the attention of the Court that the debtor has not filed its tax return for 1983 nor does the debtor have a tax identification number.

## CONCLUSIONS OF LAW

The Bank of Powhatan and the United States Trustee filed their motions to convert or to dismiss or convert, respectively, under the provisions of § 1112(b).[2] Congress reposed wide discretion in this Court pursuant to § 1112(b). *See* H.Rep. No. 95–595, 95th Cong., 1st Sess. 405 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787. The Court is given authority to dismiss a case or convert the Chapter 11 proceeding to one under Chapter 7 "whichever is in the best interest of creditors and the estate, for cause...." The general consensus among the courts is that "cause" includes an inquiry into whether the debtor's Chapter 11 petition was filed in good faith. In *In re G–2 Realty Trust*, 6 B.R. 549, 2 C.B.C.2d 1344 (Bankr.D.Mass.1980), the court had occasion to state:

Under § 1112(b) of the Bankruptcy Code (11 U.S.C. § 1112(b)), the Court may dismiss a Chapter 11 proceeding for "cause." The legislative history of the Code makes clear that this section grants the Court wide discretion to use its equitable authority to dismiss a proceeding

of their agreement with the purchasers of the lots of the 2.12 acre parcel to create a dedicated street out of said parcel.

2. § 1112(b). Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of additional time for filing another plan or a modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan; and

(9) termination of a plan by reason of the occurrence of a condition specified in the plan.

under Chapter 11 where such a result is appropriate. [Citations omitted.] Inherent within this discretionary authority is the power of the Court to dismiss a proceeding where it finds a lack of good faith on behalf of the debtor and a concomitant attempt to abuse the purposes of the Code. *In re Northwest Recreational Activities, Inc.,* 4 B.R. 36, 6 B.C.D. 164 (N.D.Ga.1980).

*Id.* 6 B.R. 549, 2 C.B.C.2d at 1348. *See also Weathersfield Farms, Inc.,* 14 B.R. 574, 5 C.B.C.2d 312 (Bankr.D.Vt.), *aff'd,* 15 B.R. 282, 5 C.B.C.2d 315 (D.Vt.1981); *In re Tolco Properties, Inc.,* 6 B.R. 482, 3 C.B. C.2d 100 (Bankr.E.D.Va.1980).

The Bank of Powhatan alleged as part of its motion that the debtor acted in bad faith by engaging in various delay tactics prior to the filing of its petition and in filing its petition on the even of foreclosure to prevent the Bank from exercising its legal rights under the deed of trust instruments and state foreclosure laws. The Bank's motion also alleges under § 1112(b)(1) that there is an absence of a reasonable likelihood of rehabilitation of the debtor and alleges under § 1112(b)(3) that there has been an unreasonable delay by the debtor that is prejudicial to creditors. The motion filed by the U.S. Trustee seeks dismissal or conversion to Chapter 7 alleging that the grounds contained in § 1112(b)(1), (2) and (3) exist to give this Court adequate cause to make an appropriate disposition of the case.

With respect to whether or not the debtor has filed this petition in good faith, a survey of the decisions of other bankruptcy courts indicate a consideration of various factors. The courts in *In re Dutch Flat Investment Company,* 6 B.R. 470 (Bankr. N.D.Calif.1980) and *In re Dolton Lodge Trust No. 35188,* 22 B.R. 918, 7 C.B.C.2d 303 (Bankr.N.D.Ill.1982) examined whether the Chapter 11 petition was filed on the eve of foreclosure; whether or not the realty of the corporation was the sole asset of the debtor; whether or not the debtor had any ongoing business in need of rehabilitation; the presence or absence of any unsecured creditors; and whether or not there existed a reasonable probability of a plan of reorganization being confirmed. Using similar factors, the court in *In re Weathersfield Farms, Inc.,* 14 B.R. 574, 5 C.B.C.2d 312 (Bankr.D.Vt.1981) found sufficient cause for dismissal of the debtor's Chapter 11 case where the proposed plan of reorganization was impractical and unworkable, and the only motive for filing Chapter 11 was to avoid the consequences of foreclosure by the secured creditor. The court also examined whether or not there were any unsecured creditors which would be affected by the dismissal. *Id.* 14 B.R. 574, 5 C.B.C. at 314. Likewise, the court in *In re The Alison Corporation,* 9 B.R. 827, 4 C.B.C.2d 199 (Bankr.S.D.Calif.1981) examined the fact that the corporate debtor had only been formed two days prior to its filing Chapter 11 and for the specific purpose of preventing foreclosure. The court also looked to the fact that the corporation was not an ongoing business, there was no income stream, there was equity in the property, there was no intent on the part of the debtor to rehabilitate the corporation, and there were not any unsecured creditors who could benefit from the equity in the property. *Id.* 9 B.R. 827, 4 C.B.C. at 200–02. In *In re Fast Food Properties, Ltd. No. 1,* 5 B.R. 539 (Bankr.C.D.Calif.1980), the court looked to the intent of the debtor in filing its Chapter 11 petition and held that the case must be dismissed inasmuch as the debtor had filed the case solely for the purpose of frustrating the foreclosure by the secured creditor. *Id.* at 540.

The Court finds in the case before it a course of conduct by the debtor and its principal officer for some years prior to filing its petition designed to stave off foreclosure by the Bank of Powhatan. This Court concludes that a debtor's conduct leading up to the filing of its petition is also a relevant factor to be considered in determining whether a lack of good faith exists. This Court has previously stated in connection with the conversion of a Chapter 11 case to one under Chapter 7 that:

Although the debtor may have other ideas relative to the rehabilitation of this

Property, it is not appropriate that it be given choices *ad infinitum* to the continual delay and detriment of others. The history of this project for four years has resulted in frustration of the primary secured creditor. The Court should give consideration to the prior conduct of the Debtor in reaching a determination of whether to allow the Chapter 11 proceeding to continue or to dismiss or convert under § 1112(b) ... This Court cannot conclude that [the secured creditor] should be required to wait for further attempts to rehabilitate the Debtor.

*In re Tolco Properties, Inc.*, 6 B.R. 482, 3 C.B.C.2d 100, 109 (Bankr.E.D.Va.1980). A review by this Court of the various delays and conduct of this debtor and its principal officer prior to Chesmid Park filing its petition in bankruptcy leads the Court to conclude that the debtor's filing of its bankruptcy petition on the even of foreclosure after four years of repeated delay and continued delinquencies in payment is sufficient in conjunction with the other factors present in this case for this Court to dismiss or convert this petition under § 1112(b). Here, as in *Dutch Flat Investment Company*, there was no ongoing business and no employees of Chesmid Park. Chesmid Park is a corporation which holds as its sole asset approximately ten acres of commercial property. The sole purpose of the corporation is to develop this property and ultimately sell it either *in toto* or as subdivided into parcels. As in the *Alison* case, this Court cannot stand by while a debtor files bankruptcy merely to stave off foreclosure in an attempt to market the property for the greatest profit. In *Alison*, the court stated that it would not permit a bankruptcy filing to be used as a means to obtain a profit or recoup an investment. *Alison*, 9 B.R. 827, 4 C.B.C.2d at 201.[3]

**3.** In *Alison*, the court considered the factor that there were no unsecured creditors which would be affected by a dismissal or conversion pursuant to § 1112(b). This is not the case here. The schedules filed by Chesmid Park indicate a number of unsecured creditors, but with limited

In addition, this Court finds it relevant to its determination that Chesmid Park sought an injunction in the Chesterfield County Circuit Court to enjoin Lewis from conveying parcels 1B and 3A to Vernon Pledger. The preliminary injunction granted by that court was subsequently dissolved in a full hearing on the merits. At that time, the court determined that the sale on January 21, 1983 was a valid trustee's sale. This Court finds that the issue of the validity of the trustee's sale was resolved in that suit. Moreover, the contracts signed by each of the purchasers provided that the sale had to be approved by the Chesterfield County Circuit Court before the trustee's sale was binding on the parties. Apparently, Lewis, the trustee, has to date not sought approval of the sales by the Chesterfield County Circuit Court. As a result, this Court might be placed in the position, if this petition is not dismissed, of having to rehear the same facts as previously heard by the state court in the injunction suit, and if necessary, direct the contracting parties to seek confirmation of the individual contracts in the state forum. The current status of these contracts is an issue which the state court is privileged to decide and a dismissal of this petition would, in this Court's opinion, facilitate the necessary steps by the trustee, Lewis, under the deed of trust to seek consummation of the sale on January 21, 1983.

Finally, the courts have considered whether there was a reasonable probability that a plan of reorganization could be confirmed. The Court finds in this case that the plan filed by the debtor on October 4, 1984 is not confirmable on its face. Although the present proceeding is not a hearing on the confirmation of the debtor's plan, the Court nevertheless finds that the plan contains provisions which are contrary to the law regarding compensation to be

claims in proportion to the claims of the Bank of Powhatan and other secured creditors. This Court has weighed this factor in the balance, but this fact, standing alone, does not tip the scales in favor of a finding of good faith.

paid to the U.S. Trustee, and the plan contains no classification of creditors whatsoever. In addition, the debtor has not filed a disclosure statement in over a month and a half since the filing of the plan. The continuing delay necessitated by the failure to file a disclosure statement coupled with a plan of reorganization which is patently unconfirmable on its face leaves this Court to conclude that the debtor may be unable to timely effectuate a plan without further delays to the prejudice of the Bank and other creditors. Not only is this grounds to dismiss or convert this case under § 1112(b)(2), the dilatory lack of filing of a disclosure statement is evidence that this debtor is not serious in its intention to reorganize. As in the *Alison* and *Weathersfield Farms* cases, this Court finds the debtor's failures in this regard to be adequate evidence to establish lack of good faith sufficient to dismiss this case or convert it to one under Chapter 7.

The U.S. Trustee argued at the hearing of this matter that additional grounds exist for the dismissal or conversion of this case to one under Chapter 7 irrespective of the issue of good faith. In particular, the U.S. Trustee alleges that the debtor comes within the purview of the requirements of § 1112(b)(1), (2) and (3). With respect to § 1112(b)(1), this Court cannot conclude that there is a continuing loss to or diminution of the estate which that section requires. There exists in the property which is the sole asset of the debtor a tremendous equity cushion for the protection of the secured creditors. This Court cannot find an actual depreciation of the value of the property which would be required to hold that the first element of § 1112(b)(1) had been met. *In re Tolco Properties, Inc.*, 6 B.R. 482, 3 C.B.C.2d 100, 108 (Bankr.E.D. Va.1980).

With respect to § 1112(b)(2), this Court need not wait until a confirmation hearing in order to consider whether the debtor is unable to effectuate a plan of reorganization. *See In re Weathersfield Farms, Inc.*, 14 B.R. 574, 5 C.B.C.2d 312 (Bankr.D.Vt.) *aff'd*, 15 B.R. 282, 5 C.B.C.2d 315, 316 (D.Vt.1981). For the reasons heretofore stated in this opinion, this Court concludes that the debtor will be unable to timely effectuate a plan thus establishing grounds for this Court to dismiss or convert this case pursuant to § 1112(b)(2).

With respect to § 1112(b)(3), the facts clearly demonstrate an unreasonable delay by Chesmid Park which prejudiced the Bank of Powhatan and other creditors in this case. The Bank of Powhatan was delayed for four years prior to the filing of this petition. It has since been delayed for over six months and the debtor still has not filed a disclosure statement. This Court finds this delay to be unreasonable under the circumstances of this case.

Other cause exists for this Court to dismiss or convert the debtor's petition pursuant to § 1112(b)(3). The evidence at the hearing was uncontroverted that the debtor was persistently dilatory in filing the required reports under the Consent Order dated September 18, 1984. In addition, the U.S. Trustee indicates that no status reports have been filed by the debtor as required. Although some delay was caused by the debtor's original responsible officer being removed due to ill health and the debtor's new responsible officer, John R. Smith, also handicapped by ill health, most of the continuing delay in this case is attributable to factors other than the poor health of the principal officers of the debtor. It has been held in *In re Modern Office Supply, Inc.*, 10 B.C.D. 529, 28 B.R. 943 (Bankr.W.D.Okla.1983), that the debtor's failure to file interim financial statements by the fifteenth of each month pursuant to a court order designed to give creditors a true picture of the status of the debtor's operations constitutes an unreasonable delay sufficiently prejudicial to creditors within the meaning of § 1112(b)(3) to allow the court in its discretion to dismiss or convert the petition. This Court concurs in the reasoning of this decision. In addition, the facts in this case indicate that the debtor has not filed its 1983 tax return nor has it acquired a tax identification number. Accordingly, this Court concludes that grounds exist under

**160**

§ 1112(b)(3) for this Court to make an appropriate disposition.

The final question is whether the appropriate disposition is for this Court to dismiss this case or in the alternative, convert it to Chapter 7. In this regard, the Court again notes the litigation in Chesterfield County Circuit Court. The debtor has for its own reasons refused to honor the contracts entered into at the foreclosure sale on January 21, 1983. The debtor attempted in that litigation to enjoin Lewis from complying with the terms of the contract of sale to Vernon Pledger for lots 1B and 3A. As previously stated, the preliminary injunction was dissolved and a permanent injunction was not granted at a hearing on the merits, the effect of which was to validate the foreclosure sale entered into between the trustee under the deed of trust and various purchasers. The Circuit Court of Chesterfield County having already ruled on the validity of the trustee's sale, it would be inappropriate for this Court to give the debtor an additional forum in which to relitigate these issues. Such an occasion could arise if this Court converted this case to Chapter 7 due to the fact that if the Chapter 7 trustee attempted his own sale, it would be clouded by the prior January 21, 1983 sale. In addition, if the Chapter 7 trustee instead sought to carry forward with the prior sale, he would be forced under the contracts to seek confirmation of the individual purchases in the Circuit Court of Chesterfield County.

For these reasons, the Court concludes that it is in the best interest of all creditors for this Court to dismiss this Chapter 11 case rather than convert it to a case under Chapter 7.

An appropriate Order will issue.