**In the Matter of John Charles Cooper GOULD and Janice M. Gould, Debtors–Appellees.**

**Appeal of Donald B. FISHER.**

**No. 91–3473.**

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1992.

Decided Sept. 10, 1992.

Jack E. Roebel, Fort Wayne, Ind. (argued), for appellant Donald B. Fisher.

John R. Burns, III (argued), David P. Irmscher, Baker & Daniels, Fort Wayne, Ind., for appellees John D. Weaver and Susan L. Weaver.

William E. Harris, Moss, Crowell, Harris, Yates & Long, Fort Wayne, Ind. (argued), for debtors-appellees John Charles Cooper-Gould and Janice M. Gould.

Before CUMMINGS, FLAUM, and MANION, Circuit Judges.

FLAUM, Circuit Judge.

In the late 1970s, the Trafalgar Corporation and John Gould (collectively "Gould"), commenced plans to develop "Scotia," an upscale residential community located on 200 acres of prime real estate in Allen County, Indiana. In the course of planning the development, Gould negotiated a sewer easement across a contiguous plot of land owned by John and Susan Weaver. In exchange, Gould granted the Weavers a right of first refusal (*i.e.*, the right to match any bona fide purchase offers) in the event Gould decided to sell a 7.5 acre tract of Scotia that bordered the Weavers' property.

In 1984, Gould and Trafalgar filed simultaneous petitions for bankruptcy, and in March 1985 their estates conducted a joint sale of the entire Scotia development, which brought in a high bid of $412,000 from the appellant Donald Fisher. After gaining reassurance that all interested parties had received notice of the proposed sale, the bankruptcy court confirmed the transaction in May 1985. Fisher paid the agreed-upon purchase price, received a warranty deed from Gould, and proceeded with the development of Scotia. However, it appears that the title search of the Scotia property, which had been conducted prior to the sale by attorneys for Fisher and Gould—and which, incidentally, is the subject of a separate malpractice action— failed to uncover the Weavers' easement, despite the fact it was of record. Consequently, the Weavers were left off the clerk's mailing matrix and never received notice of the March 1985 bankruptcy sale, all of which left Fisher with a clouded title.

The Weavers filed an adversary proceeding against Gould and Fisher seeking to compel transfer of the 7.5 acre parcel to them at a *pro-rata* price, but it was dismissed on procedural grounds unrelated to this suit. Notwithstanding that dismissal, Gould apparently decided he had better find a way to deliver a clear title to Fisher, so he filed a Motion to Vacate, in Part, the Sale of the Real Estate to Fisher, which the bankruptcy court granted. *In re Cooper Gould*, No. 84–10620 (Bankr.N.D.Ind. May 19, 1989) (the "May 1989 rebidding order"). The legal effect of that order was to return the 7.5 acre parcel to Gould's estate, which in turn rendered it amenable to the jurisdiction of the bankruptcy court. (As will become relevant later, Fisher did not receive a refund for the redacted portion of property.) Given the circumstances, the bankruptcy court decided that the most equitable course was to reopen bidding on the 7.5 acre parcel.

Significant for our purposes, Fisher did not appeal that decision. Rather, he acquiesced by submitting a second bid on the 7.5 acre tract, this time giving the Weavers notice of the offer. Under the terms of the second bid, which once again was submitted to the bankruptcy court for approval, Fisher agreed to pay the bankruptcy estate $420,000 for the 7.5 acre parcel, and the estate agreed in turn to pay Fisher $420,-

000—making the whole transaction a wash—to relinquish any claim he might have for breach of warranty from the first sale. The Weavers filed an objection to this transaction, reasserting their right of first refusal, but this time they alleged that the offer was a bogus one that the court should reject. The Weavers maintained that the bid was merely an attempt to foreclose their right to match all bids by offering more money than they (or anyone else) would reasonably pay for the 7.5 acre tract. (Recall that Fisher originally paid $412,000 for the *entire* Scotia development.) The value of the "warranty claim" Fisher allegedly could assert against Gould was worthless, the Weavers asserted, because a title delivered by judicial sale *never* carries any warranties.

In an attempt to unravel this knot, the bankruptcy court issued two orders on September 4, 1990. In the first, it agreed with the Weavers that Fisher's second offer was a sham and declined to approve it; accordingly, the court ordered the property rebid once again, this time instituting detailed bidding procedures (the "September 1990 rebidding order"). In the second order, the court concluded that the Weavers' right of first refusal was an executory contract which Gould was entitled to reject (the "executory contract order"). The Weavers appealed the latter order to the district court. Fisher, for his part, filed a Motion to Alter or Amend which asked the bankruptcy court to set aside both the September 1990 *and* May 1989 rebidding orders, and to confirm the sale of the 7.5 acre parcel upon its original terms and conditions.[1] The bankruptcy court denied Fisher's motion in December 1990, and Fisher appealed that ruling to the district court pursuant to Bankruptcy Rule 8001 *et seq.*

In a consolidated appeal, the district court affirmed the rebidding and executory contract orders. *In re Cooper Gould*, Nos. 91–00001, 91–00078 (N.D.Ill. Sept. 26, 1991). Regarding the rebidding orders, the district court ruled that (1) the May 1989 order was a final judgment, making Fisher's attempt to set aside that order untimely; and (2) the bankruptcy court did not abuse its discretion in instituting detailed rebidding procedures in the September 1990 order. Fisher challenges both of these rulings on appeal. The interests of Gould and Fisher are aligned, as both would like to go back to the original sale, a fact reflected in the nearly identical arguments contained in their respective briefs. The Weavers elected not to appeal the district court's affirmance of the executory contract order.

Fisher's principal argument on appeal raises a formidable procedural hurdle: he continues to challenge the efficacy of the bankruptcy court's May 1989 order—which, to reiterate, vacated the sale in part and directed rebidding on the 7.5 acre parcel—despite the fact that he never appealed that order. If the May 1989 order was a final order, subject to immediate appeal, then we are precluded from reaching Fisher's argument since he failed to appeal that order in a timely fashion. Fisher asserts that his rights as a creditor were not finalized until the September 1990 order; the May 1989 order lacked finality, he contends, because it contemplated a rebidding process, and did not refund a portion of the original purchase price even though he was forced to relinquish the 7.5 acre parcel.

 We have jurisdiction over final decisions of a district court reviewing final decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(d). The definition of finality in a bankruptcy appeal taken under 28

---

1. This entreaty to the bankruptcy court hinged on the court's executory contract order which effectively nullified the Weavers' right of first refusal. Given that order, Fisher argued, rebidding would be useless: he was the only potential bidder for the property because the 7.5 acre parcel was landlocked between Fisher's land (*i.e.,* the Scotia development) and the Weavers' land, and because his significant expenditures developing Scotia compelled him to be the successful bidder. We need not address this claim because, as we discuss more fully below, it is too late in the day for Fisher to challenge the rebidding decision itself. The Weavers, incidentally, challenged Fisher's characterization at oral argument, asserting that a purchaser of the 7.5 acre parcel would acquire from Fisher a prescriptive easement over a street in the Scotia development that dead ended in close proximity to the parcel.

U.S.C. § 158(d) is considerably more flexible than in an ordinary civil appeal taken under 28 U.S.C. § 1291.[2] *See In re Irvin,* 950 F.2d 1318, 1321 (7th Cir.1991); *In re Official Committee of Unsecured Creditors,* 943 F.2d 752, 755 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1292, 117 L.Ed.2d 515 (1992); *In re Unroe,* 937 F.2d 346, 348 (7th Cir.1991). That broader approach to finality stems from

> the need to tie up the many subsidiary matters that litter the road to the distribution of assets in bankruptcy. A court cannot wait until the end of the case to allow the appeal, because final disposition in bankruptcy ... depends on prior, authoritative disposition of subsidiary disputes.

*In re Kilgus,* 811 F.2d 1112, 1116 (7th Cir.1987). Thus, an order is considered "final" for purposes of 28 U.S.C. § 158(d) when it "finally determines" one creditor's position, even though there is continuing action in the adversary proceeding. *See In re Sandy Ridge Oil Co., Inc.,* 807 F.2d 1332, 1334 (7th Cir.1986).

■ We conclude that the May 1989 order was a final decision subject to immediate appeal. Applying bankruptcy's expansive definition of finality,[3] the May 1989 order completely nullified Fisher's original purchase of the parcel *and* ordered rebidding on the property; were it not considered a final order subject to immediate challenge, doubts would linger on in any subsequent sale of the property, impeding administration of the estate. In fact, we recently held that a decision to set aside the sale of a bankruptcy asset and to reopen proceedings *must* be a final order: "Were the order reopening the sale [of a bankruptcy asset] not reviewable at this juncture, any resale of the asset would be in considerable doubt." *In re Irvin,* 950 F.2d at 1319. Here, if Fisher truly had an objection to the prospect of rebidding, the time to make that argument was in response to the May 1989 order. The court later established specific rebidding procedures in the September 1990 order, but only because it felt compelled to do so after Fisher and Gould struck a dubious deal. In any event, Fisher cannot claim unfair surprise in light of his acknowledgement of finality in a letter to Gould tendering his second bid on the 7.5 acre tract:

> This bid is being made pursuant to the Court's Order Vacating the Sale in your individual bankruptcy, and ordering the property re-bid. That Order has not been appealed, and it is my position that that Order remains valid.

Application to Sell Real Estate (Mar. 23, 1990) (Ex. A).

■ Since this appeal is taken only from the September 1990 rebidding order, our review is limited to determining whether the district court abused its discretion in upholding the rebidding procedures instituted in that order. *See In re Irvin,* 950 F.2d at 1321. Those procedures included a requirement that the sale be publicly advertised, that bidders supply a 10% earnest money deposit, and that the purchaser pay the balance of the sale price at closing. In addition, the order provided that the proceeds of the sale be subject to the court's jurisdiction so that "[a]ny party having a claim for damages stemming from the previous sale of the real estate" could submit claims to recover those losses. Fisher contends that while such procedures would ordinarily be considered reasonable, the special circumstances of this case make

**2.** The Supreme Court recently addressed the intersection between bankruptcy appeals taken under 28 U.S.C. § 1291 and those taken under 28 U.S.C. § 158(d), *Connecticut Nat'l Bank v. Germain,* — U.S. —, 112 S.Ct. 1146, 1148–49, 117 L.Ed.2d 391 (1992), but that decision is not relevant for our purposes. A flexible approach to finality applies in the bankruptcy context regardless of an appeal's jurisdictional basis. *See In re Vylene Enterprises, Inc.,* 968 F.2d 887, 892–895 (9th Cir.1992); *see also* 16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3926, at 123 (Supp.1992).

**3.** Although this case could perhaps qualify for an exception to bankruptcy's expansive finality rule, *see In re Kilgus,* 811 F.2d at 1116 (disregarding liberal finality rule "[t]o avoid inducing parties to take indiscriminate appeals"); Wright, Miller, & Cooper, *supra,* § 3926, at 123 (discussing that exception), we need not address that possibility because neither Gould nor Fisher raised the issue on appeal.

them unduly burdensome. The procedures severely penalize him, he argues, because they are excessively elaborate and costly given the fact he will be the *only* bidder at the impending sale. *See supra* note 1.

We disagree. The bidding procedures established by the bankruptcy court are the sort that routinely govern estate sales. Moreover, the court adopted those procedures precisely because of the perceived collusion between Fisher and Gould in crafting the bogus second offer. Fisher's attack on the rebidding procedures is largely a roundabout attack on the (unappealable) May 1989 order. The issue is not *whether* the property should be rebid, but *how* it will be rebid. Again, if Fisher believed that rebidding would be futile because he was the only potential bidder, the time to make that argument was in an appeal of the May 1989 order. Furthermore, we are not in a position on this record to say whether the location of the 7.5 acre parcel does in fact limit bids to the Weavers and Fisher. The bankruptcy court, fully apprised of the facts, attempted to find an equitable solution to the defects that infected both the first and second attempts to sell the property. Indeed, by establishing a procedure for claims resolution, the bankruptcy court took pains not to leave anyone, including Fisher, without recourse for damages resulting from the vacated sale; although Fisher complains that the rebidding procedures will prove time-consuming and costly, we cannot say, under the circumstances, that it was an abuse of discretion to adopt this approach.

■ Finally, Fisher challenges the bankruptcy court's determination that he did not hold a claim for breach of warranty against Gould. Whether he did or not turns on whether the original sale was a judicial sale under Indiana law, *see, e.g., Vonderahe v. Ortman,* 128 Ind.App. 381, 147 N.E.2d 924, 926 (1958), or a sale in the ordinary course of business under the Bankruptcy Code. *See, e.g., In re Canyon Partnership,* 55 B.R. 520, 524 (Bankr.

S.D.Cal.1985). The district court declined to address that issue, concluding that it was an integral part of the claims resolution process established by the bankruptcy court. We agree. As noted, the bankruptcy court specifically ordered that all proceeds from the sale of the 7.5 acre parcel be subject to the court's jurisdiction for distribution to potential claimants. Whether Fisher is entitled to recover for breach of warranty is properly left for that stage of the litigation.

AFFIRMED.