**In the Matter of Barbara Ann GRIESHOP, Debtor.**

**Bankruptcy No. 85–10252.**
**Civ. No. F 86–149.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Aug. 13, 1986.

Robert E. Grant, Baker, Daniels & Shoaff, and Christina McKee, Asst. U.S. Atty., Fort Wayne, Ind., for Federal Land Bank of Louisville and Farmers Home Admin.

Earl Raskosky, Fort Wayne, Ind., for debtor/appellee.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on creditor/appellant Federal Land Bank of Louis-ville's ("Land Bank") appeal from a final order of the United States Bankruptcy Court for the Northern District of Indiana, entered February 26, 1986. That order denied the motions of the Land Bank and Farmers Home Administration for relief from stay or dismissal. Farmers Home Administration has not joined in this appeal. The debtor has not filed a response to the Land Bank's appeal. Both parties appeared through counsel on July 22, 1986, for oral argument. For the reasons which follow, the order of the bankruptcy court will be reversed.

The debtor herein, Barbara Ann Grieshop ("Grieshop"), filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on April 10, 1985. The Land Bank filed a motion to dismiss or for relief from stay on April 22, 1985, claiming that the debtor's lack of good faith constituted cause, pursuant to 11 U.S.C. §§ 362(d)(1) and 1112(b). Thereafter, the Farmers Home Administration filed a similar motion. Both motions were tried to the bankruptcy court and taken under advisement on October 22, 1985. On February 26, 1986, the bankruptcy court entered its order denying both motions. It is from this order that creditor/appellant Land Bank appeals.

### I. FACTS

Grieshop is a debtor under Chapter 11 of the United States Bankruptcy Code. Her husband, Michael Grieshop, is also a bankruptcy debtor. His petition resulted in a confirmed Chapter 13 plan on January 18, 1982.

Mr. Grieshop was continually late in the payment of his obligations to the Land Bank, as they existed under the confirmed plan. Accordingly, on July 19, 1984, the Land Bank sought the dismissal of his proceeding or, in the alternative, relief from the automatic stay, because of his failure to make the payment due March 1 of that year. When this motion was heard on August 9, 1984, the bankruptcy court entered an order relieving the Land Bank of the automatic stay, permitting it to foreclose.

Based upon the authority given it by this order, the Land Bank commenced an action to foreclose its mortgage upon the 242½ acres of real estate securing the amounts due it.

Mr. Grieshop, on October 23, 1984, returned to the bankruptcy court and requested that it reimpose the automatic stay in order to stop the pending foreclosure. The bankruptcy court refused to do so on December 14, 1984, and, three days later, the Land Bank obtained a judgment of foreclosure and decree of sale from the Wells Circuit Court against both Mr. and Mrs. Grieshop.

As contemplated by this judgment, the real estate securing the Land Bank's claim was ordered and scheduled to be sold on April 16, 1985. Six days before the scheduled sale, Michael Grieshop's wife, the current debtor, filed this proceeding under Chapter 11 and thereby obtained the benefit of an automatic stay covering the same real estate.

The schedules she filed with the court and her testimony at trial indicate that she has only three creditors, her mother and the two creditors who have mortgages upon the farm, the Land Bank and the Farmers Home Administration. Her employment as a nurse with the Jay County Hospital provides her a monthly income of $680. In order to meet the adequate protection payments of $1,800 per month required by the bankruptcy court, she must rely upon her husband's income from the farming operations, which she considers her own. Mrs. Grieshop admitted in her testimony that she filed this petition in order to stop the sale, which was the culmination of the Land Bank's foreclosure. Her hope in doing so was to enable her husband to make his mortgage payments in order to keep the farm or so that he might sell it at a high enough price to preserve their equity in the land. This farm is the debtor's major asset. The rest of her property consists of only an automobile and miscellaneous household goods and furnishings.

## II. ISSUES

In this appeal, the Land Bank argues that the bankruptcy court committed both factual and legal errors. Specifically, the Land Bank challenges the finding that the debtor is not the alter ego of her husband, as well as the bankruptcy court's determination that the debtor does, in fact, intend to reorganize.

The alleged legal errors revolve primarily around the bankruptcy court's treatment of the issue of good faith, both in terms of defining the proper standard and applying it to the facts of this case. Other less substantial legal issues raised by this appeal include whether the bankruptcy court erred in failing to consider the doctrine of collateral estoppel and whether Indiana law regarding tenancy by the entireties has a bearing on this case.

### A. Findings of Fact

Turning first to the alleged factual errors, the Rules of Bankruptcy Procedure provide the applicable standard of review. Rule 8013 reads:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

This high standard of review has been followed by district courts. *See, e.g., In re Clarkson,* 767 F.2d 417, 419 (8th Cir.1985); *In re Tesmetges,* 47 B.R. 385, 388 (E.D. N.Y.1984). The "clearly erroneous" language of the rule tracks the language found in Federal Rule of Civil Procedure 52(a), and cases construing the standard under Rule 52(a) are equally applicable to bankruptcy cases. *Matter of Louisiana Industrial Coatings, Inc.,* 53 B.R. 464, 467 (E.D.La.1985). The Supreme Court recently reaffirmed its longstanding definition of this standard: " '[A] finding is "clearly erroneous" when although there is evidence

to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

■ The Land Bank argues that the bankruptcy court's findings on two crucial factual issues are clearly erroneous. First, it contends that the court's finding that Grieshop is not acting as the alter ego of her husband is clearly erroneous. Upon a review of the evidence on this point, the court finds the Land Bank's argument to be well taken. The bankruptcy court found the interests of Grieshop and her husband to be sufficiently distinct that no identity of interest existed, reasoning that "Mr. Grieshop consented to a lifting of the automatic stay while Mrs. Grieshop has put herself into bankruptcy to avoid such an outcome." Bankruptcy Order of February 26, 1986 at 4. This distinction becomes transparent when all the surrounding circumstances are considered. While it is true that Mr. Grieshop agreed to the lifting of the automatic stay in his case by stipulation on August 9, 1984, he reappeared less than three months later in an effort to have the stay reimposed. The bankruptcy court held him to his agreement, however, and ordered on December 14, 1985 that the Land Bank be permitted to pursue its foreclosure. Approximately four months later, the debtor herein filed her petition on the eve of the foreclosure sale. Thus, a logical inference can be made that upon the failure of his motion to reconsider, Mr. Grieshop saw the filing of a petition by his wife as the only possible means remaining to forestall the sale of the farm.

Regardless of the context in which Grieshop's petition was filed, however, it remains that the legal interest of Mr. and Mrs. Grieshop in the farm were identical: both held the land as tenants by the entireties. Given this fact, and given the history of the Grieshop's use of the bankruptcy laws to attempt to save their property from creditors, there does not appear to be any evidence that Grieshop was not acting as the alter ego of her husband. The bankruptcy court's finding to the contrary is clearly erroneous.

■ Second, the Land Bank argues that the bankruptcy court's finding that Grieshop intends to reorganize her business pursuant to the requirements of Chapter 11 is also clearly erroneous. Her testimony indicates that Grieshop's goal in filing her petition was to either enable her husband to generate enough income for them to keep the farm, or to sell the farm at or near its fair market value in order to protect their equity in the property. There is no indication from the record before the court that Grieshop has taken any steps to submit a plan of reorganization, or indeed that she has even formulated one in her own mind. On this issue, the bankruptcy court stated without elaboration that Grieshop "is seeking to establish a plan of reorganization based on the income from the farm and her off-farm income...." No explicit testimony supports this finding, and the court has not been made aware of any such plan having been filed by Grieshop. Thus, the bankruptcy court's conclusion must be supported only inferentially, if at all. The facts regarding Grieshop's income sources do not support such an inference. Schedules filed with the bankruptcy court indicate that her income includes her income as a nurse at the Jay County Hospital of $680 per month and farm income of $1,000 per month. This income is not sufficient even to pay the amount ordered by the bankruptcy court as adequate protection to her secured creditors, without considering the fact that other living expenses must come from these funds. Adequate protection payments have only been possible through supplemental assistance from third parties.

Taken as a whole, this evidence shows neither the intention nor even the ability of Grieshop to reorganize under Chapter 11. The bankruptcy court's finding on this issue is clearly erroneous.

### B. Conclusions of Law

Unlike the "clearly erroneous" standard used to review factual findings of the bankruptcy court, legal conclusions are subject to de novo review. *In re Global Western Development Corp.*, 759 F.2d 724, 726 (9th Cir.1985). In addition, "the reviewing court must determine whether the trial court applied the proper legal standard to the facts." *In re Stratton*, 23 B.R. 284, 287 (D.S.D.1982).

### 1. Good Faith

The Land Bank's central legal issue concerns the concept of good faith and the degree of bad faith necessary to constitute "cause" for either terminating the automatic stay or dismissing the petition altogether. The Land Bank argues that cause exists under two provisions of the bankruptcy code. In connection with its motion to terminate the automatic stay which Grieshop received upon filing her petition, the Land Bank relies on 11 U.S.C. § 362(d)(1), which reads in part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

The second provision cited by the Land Bank is 11 U.S.C. § 1112(b) in support of its motion to dismiss the petition. It reads in part:

(b) Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause....

In neither of these sections is the concept of good faith explicitly mentioned. Good faith has long been a prerequisite to a debtor's use of the bankruptcy laws, however, and the lack thereof has consistently been recognized as adequate cause for both terminating the stay afforded by the filing of a petition as well as dismissing the petition outright. *See, e.g., In re Thirtieth Place*, 30 B.R. 503, 506 (Bankr. 9th Cir. 1983) (finding of good faith clearly erroneous leading to lifting of stay and dismissal of petition); *In re Lotus Investments, Inc.*, 16 B.R. 592, 595 (Bankr.S.D.Fla.1981) (lack of good faith warranted both relief from stay and dismissal of petition).

Despite its recognition as a valid reason to lift a stay or dismiss a petition, the concept of "bad faith" (or lack of good faith) has resisted easy definition. At the root of any definition, however, is a debtor's respect for the underlying goals and policies encouraged by bankruptcy law:

The provisions of the Code dealing with rehabilitation and reorganization must be viewed as direct lineal descendants of a legal philosophy solidly embedded in American Bankruptcy law. Review and analysis ... disclose a common theme and objective: avoidance of the consequences of economic dismemberment and liquidation, and the preservation of ongoing values in a manner which does equity and is fair to rights and interests of the parties affected. But the perimeters of this potential mark the borderline between fulfillment and perversion.... That borderline is patrolled by courts of equity, armed with the doctrine of "good faith": the requirement that those who invoke the reorganization or rehabilitation provisions of the bankruptcy law must do so in a manner consistent with the aims and objectives of bankruptcy philosophy and policy—must, in short, do so in "good faith."

*Matter of Management Technology Corp.*, 54 B.R. 5, 7–8 (Bankr.D.N.J.1984) (quoting *In re Victory Construction Co.*, 9 B.R. 549, 558 (Bankr.C.D.Cal.1981)).

In determining whether good faith exists in a given case, the court must consider all underlying facts and circumstances. *In re Thirtieth Place, supra,* 30 B.R. at 505 (quoting *In re Loeb Apartments, Inc.,* 89 F.2d 461, 463 (7th Cir.

1937)). Thus, many cases have developed sets of factors which tend to recur in bankruptcy petitions in which good faith is an issue. As gleaned from the cases, bad faith may exist where:

1. The debtor has few or no unsecured creditors.
2. There has been a previous bankruptcy petition by the debtor or a related entity.
3. The pre-petition conduct of the debtor has been improper.
4. The petition effectively allows the debtor to evade court orders.
5. There are few debts to non-moving creditors.
6. The petition was filed on the eve of foreclosure.
7. The foreclosed property is the sole or major asset of the debtor.
8. The debtor has no ongoing business or employees.
9. There is no possibility of reorganization.
10. The debtor's income is not sufficient to operate.
11. There was no pressure from non-moving creditors.
12. Reorganization essentially involves the resolution of a two-party dispute.
13. A corporate debtor was formed and received title to its major assets immediately before the petition and
14. The debtor filed solely to create the automatic stay.

*See, e.g., In re Chesmid Park Corp.,* 45 B.R. 153 (Bankr.E.D.Va.1984); *Matter of Winn,* 43 B.R. 25 (Bankr.M.D.Fla.1984); *In re Khan,* 34 B.R. 574 (Bankr.W.D.Ky. 1983); *In re Corp. Deja Vu,* 34 B.R. 845 (Bankr.Md.1983); *Matter of Hill,* 34 B.R. 21 (Bankr.M.D.Fla.1983); *In re Wong,* 30 B.R. 87 (Bankr.C.D.Cal.1983); *In re Thirtieth Place, supra.*

The bankruptcy court erred in two respects in its consideration of the issue of good faith in this case. First, the standard it enunciated for measuring good faith is unduly narrow. Second, the court failed to consider all surrounding circumstances.

In its order, the bankruptcy court did not discuss the standard used to measure good faith except to cite *Matter of Lipply,* 56 B.R. 524 (Bankr.N.D.Ind.1986). *Lipply* did not explicitly address the concept of good faith. Rather, it discussed conditions beyond the lack of adequate protection which might constitute "cause" for purposes of 11 U.S.C. § 362(d)(1), noting that "[c]reditors have been granted relief where malfeasance by the debtor(s) has constituted an abuse of the bankruptcy process." 56 B.R. at 527.

█ When applied to the broader concept of good faith, the standard noted in *Lipply* and relied upon by the bankruptcy court herein, is too limiting. Defining good faith in the bankruptcy context or elsewhere has never been an easy task. It may not be summarily equated with malfeasance and abuse. A debtor may simply be motivated by a desire to use any means at hand to preserve assets that are in jeopardy. Such acts of desperation do not necessarily imply active malfeasance directed at a given creditor. They may, however, illustrate a misuse, as opposed to abuse, of bankruptcy procedure to the extent that the legitimate ends of bankruptcy law are frustrated by the debtor's actions.

█ Grieshop neither was motivated by ill will directed specifically at her secured creditors nor did she affirmatively attempt to violate the law in filing her petition. Rather, she used the process in such a way that the underlying policy of securing an orderly and fair adjustment of the relationship between debtor and creditors could not be realized. This constitutes a lack of good faith; it does not necessarily rise to the level of malfeasance. As a result, the bankruptcy court erred by expanding the limited discussion of abusive conduct in *Lipply* to an all-encompassing definition of good faith.

█ Second, the bankruptcy court did not consider all the relevant facts and circumstances in determining whether Griesh-

op's actions were in good faith. The overriding circumstance is the fact of Grieshop's filing of her petition on the heels of her husband's unsuccessful Chapter 13 bankruptcy. While his petition is not legally connected with Grieshop's, it is nonetheless appropriate that this court consider the timing and circumstances surrounding both petitions in connection with their effect on the secured creditors of the real estate at issue. The clear effect has been to delay foreclosure on the real estate for reasons which are not likely to further bankruptcy policy. Practically speaking, the only arguable difference in the income information provided in Grieshop's bankruptcy and that of her husband is the additional $680 per month she earns as a nurse, resulting in a combined farm and off-farm income of $1,680. When considered in light of scheduled living expenses totalling $1,065 per month, this amount is not likely to have an appreciable impact on her ability to reorganize the business of the farm since the adequate protection order of the bankruptcy court, which essentially covers only the mortgage interest, is $1,800 per month.

Several of the other factors which the bankruptcy court did not consider in its order suggest that Grieshop has not acted in good faith. For example, she has listed no unsecured creditors who would benefit from the equity in the property. In fact, the real estate upon which the Land Bank seeks to foreclose is the only substantial asset affected by the instant petition. These facts, combined with the timing of Grieshop's petition on the eve of foreclosure, are strong indicia of bad faith filing. *In re Chesmid Park Corp., supra,* 45 B.R. at 157–58.

In addition, there is a serious doubt as to Grieshop's ability to reorganize the business. The most telling evidence of this inability is her husband's lack of success in rehabilitating the farm operation in his own petition. Even in the unlikely event that Grieshop's off-farm income was not used in this effort, it is not sufficient in itself to create real prospects of the implementation of a viable plan. *In re Thirtieth Place,*

*Inc., supra,* 30 B.R. at 505. As well as bearing on the debtor's good faith, the inability to effectuate a plan in itself constitutes cause for dismissal. 11 U.S.C. § 1112(b)(2).

The list continues. The facts of this case also point unerringly to a familiar tactic used by those who have otherwise exhausted all possibilities in their efforts to save secured property: the filing of a petition on the eve of foreclosure. *Matter of Southern Communities, Inc.,* 57 B.R. 215, 217 (Bank.M.D.Fla.1986); *In re Chesmid, supra,* 45 B.R. at 157; *In re Corporation Deja Vu, supra,* 34 B.R. at 846. Indeed, it appears that every one of the fourteen factors bearing on good faith except one applies in this case. The lone exception is the lack of a recently formed corporate debtor to receive title to the land at issue. In the face of such overwhelming indicia of bad faith in the filing of Grieshop's petition, there is ample reason to grant the Land Bank's motion.

### 2. Other Legal Issues

The Land Bank raises two other legal issues. It contends first that the bankruptcy court erred by failing to consider the doctrine of collateral estoppel. This argument is premised on a finding that Grieshop was operating as the alter ego of her husband in filing her petition. While this court agrees with the Land Bank that the bankruptcy court's contrary finding on this point was clearly erroneous, the facts of this case are not such that collateral estoppel applies.

Collateral estoppel refers to the doctrine which precludes the relitigation of matters that have once been litigated and decided. In essence, the Land Bank argues that since Grieshop acted as the alter ego of her husband, she is bound by the bankruptcy court's order in her husband's case. The issue thus is whether Grieshop's de facto status as the alter ego of her husband is sufficient to overcome the traditional rule that she not be bound by a judgment in a case in which she was not a named party or otherwise directly involved. Under the facts of this case, the application of collateral estoppel is not warranted.

Cases cited by the Land Bank in support of its argument are distinguishable. For example, *In re French Gardens, Ltd.*, 58 B.R. 959 (Bankr.S.D.Tex.1986), involved multiple filings of closely related business entities in connection with an apartment complex. In an initial Chapter 11 proceeding, the court entered an order which also determined the rights of a junior lienor. On the eve of foreclosure, this lienor filed its own petition, naming the same apartment complex as its only asset. The court dismissed this second petition and imposed sanctions. It held that the first order had the effect of res judicata on the second petition in the circumstances of this case. *Id.* at 963. The facts of the instant case are sufficiently distinct from *French Gardens* to make its holding regarding res judicata inapplicable herein. Grieshop was not named or in any way explicitly bound by the order in her husband's case. The only connection of Grieshop to her husband's petition is the more nebulous finding that she acted as his alter ego. This status in itself does not give rise to collateral estoppel.

The second case cited by the Land Bank is *In re Kinney*, 51 B.R. 840 (Bankr.C.D. Cal.1985). This case involved successive filings by several members of the same family who owned real estate in danger of being foreclosed as tenants in common. The court condemned such abusive conduct, and held that it "is able to bind parties not even before it when such a scheme is demonstrated by strong and clear evidence." *Id.* at 846. Such "strong and clear" evidence existed in *Kinney* where ten successive filings occurred within a two-year period. In a case where a wife files a petition on the heels of her husband's unsuccessful bankruptcy, the facts may demonstrate bad faith, but rarely the degree of abuse found in *Kinney*.

It is significant that the court in *Kinney* noted that collateral estoppel could be imposed in that case only pursuant to 11 U.S.C. § 105, authorizing the issuance of any "appropriate or necessary" order. Such an order will generally be inappropriate in light of the fact that bankruptcy law explicitly affords either or both spouses the opportunity to file petitions in bankruptcy. The fact that this court has determined that Grieshop acted as the alter ego of her husband in filing her petition does not mandate the further finding that collateral estoppel applies as a bar to her petition. The court also refuses to exercise its discretion pursuant to 11 U.S.C. § 105 to reach this conclusion. The most that can be said of Grieshop's conduct is that she acted in bad faith. Collateral estoppel has no bearing on this case. *See In re Wong*, 30 B.R. 87 (Bankr.C.D.Cal.1983).

The final argument raised by Land Bank involves the relationship of entireties property to the bankruptcy estate when one or both spouses have filed bankruptcy. There is no indication that this issue was put before the bankruptcy court, and it formed no part of its discussion or order. It is not appropriately raised for the first time on appeal, and therefore will not be considered. *In re Glenn*, 760 F.2d 1428, 1442 (6th Cir.1985); *In re Bugos*, 34 B.R. 382, 385 (N.D.Ind.1983).

### III. CONCLUSION

For all of the foregoing reasons, the decision of the bankruptcy court is REVERSED.