**In re MGN CO., III, an Indiana Limited Partnership, Debtor.**

**Bankruptcy No. IP88–7139RAV.**

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

March 15, 1989.

---

Kevin B. McCarthy, Indianapolis, Ind., U.S. Trustee.

David L. Dunlap, Ancel & Dunlap, Indianapolis, Ind.

Grant F. Shipley, Livingston Dildine Haynie & Yoder, Fort Wayne, Ind.

Thomas C. Scherer, Bamberger & Feibleman, Indianapolis, Ind.

Thomas C. Newlin, Fleschner, Fleschner, Stark Tanoos & Newlin, Terre Haute, Ind.

Gilmore S. Haynie, Jr., Hawk & Haynie, Fort Wayne, Ind.

William Olah, Patrick Wilkinson Goeller & Modesitt, Terre Haute, Ind.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

RICHARD W. VANDIVIER, Bankruptcy Judge.

This matter comes before the Court on the Motion to Dismiss Bankruptcy filed by American Savings and Loan Association ("American Savings") on November 9, 1988, and on the Motion for Relief from Stay, Adequate Protection and for Abandonment filed by American Savings on December 9, 1988. These matters were heard on December 28, 1988. The Court now denies the motions to dismiss, for relief from stay and for abandonment, and denies in part and defers ruling in part on the

motion for adequate protection on the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The Debtor is an Indiana limited partnership, formed in 1986, which owns and operates an apartment complex known as Garden Quarter Apartments ("the Apartments") in Terre Haute, Indiana. American Savings asserts a claim against the Debtor of $7,468,678.00, evidenced by a nonrecourse note secured by a mortgage against the Apartments and a lien on rents from the Debtor's operations. Appraisals put the present value of the Apartments between $5,425,000.00 and $5,900,000.00.

2. Economic conditions in late 1986 and 1987 caused an increase in the vacancy rate in the Apartments, resulting in a decrease in revenues. The Debtor fell behind in mortgage payments to American Savings, and on May 12, 1988, American Savings initiated an action to foreclose the mortgage in Vigo Superior Court ("the foreclosure action"). On May 12, 1988, that court appointed a receiver, Newlin–Johnson Co., Inc. ("the Receiver"), which collected rents through the petition date.

3. On November 3, 1988, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code. The petition (as amended) shows, beside the debt to American Savings, approximately $68,000.00 held in security deposits for tenants, debts to trade creditors of approximately $21,000.00, and a debt of approximately $3,000.00 secured by a tractor. In addition to the Apartments, the Debtor has several unencumbered, undeveloped lots. Besides real property, the only assets of substantial worth are debts owing from Maxima Growth Network (the Debtor's general partner) of $227,598.71 and from James Peterson (one of the Debtor's limited partners) of $683,-893.31.

4. On November 9, 1988, the Debtor filed a Motion to Use Cash Collateral, and on December 19, 1988, the Debtor and American Savings filed an Agreed Entry, an interim agreement whereby approximately $200,000.00 (representing receipts in the hands of the Debtor as of the petition date, rents through the date of the hearing on the motion to use cash collateral, and sums remitted to the Debtor by the Receiver) was deposited into an interest-bearing escrow account, and the Debtor was authorized to withdraw not more than $45,000.00 each month for deposit into the Debtor's operating account.

5. On November 9, 1988, American Savings filed its Motion to Dismiss Bankruptcy, alleging that this is, in effect, a one creditor bankruptcy with little prospect of successful reorganization that has stayed the foreclosure action, and that the bankruptcy was not filed in good faith.

6. On December 9, 1988, American Savings filed its Motion for Relief from Stay, Adequate Protection and for Abandonment, alleging that there is little prospect of reorganization, that a cram-down plan is impossible without American Savings' approval, which it will not give, and that the value of its collateral will decrease during the administration of this case. If relief from stay is not granted, American Savings requested that it be granted a lien on post-petition rents collected by or due to the Debtor and a lien on post-petition rents to the extent of withdrawals from the cash collateral escrow account, and that the Debtor be ordered to pay American Savings all pre- and post-petition rents to the extent they exceed the monthly budgeted expenses for the operation of the Apartments.

7. Jim Nidlinger ("Nidlinger") testified regarding the Debtor's history and prospects for reorganization. The Court found Nidlinger to be knowledgeable and credible. Nidlinger is the general partner of Maxima Growth Network ("Maxima"), a limited partnership which is the general partner of the Debtor (and also holds limited partnership shares) and manager of the Apartments. Maxima is paid a management fee for its services.

8. The Debtor was formed as part of the refinancing of its predecessor, MGN Co. II. As part of the refinancing, the interests of three limited partners were redeemed and acquired by Maxima, which

resulted in Maxima owing the Debtor approximately $600,000.00. Caleb and Duetta Davis ("the Davises"), limited partners of MGN Co. II but not of the Debtor, received a note for approximately $366,000.00 from the Debtor for their MGN Co. II limited partnership shares. Toward the end of October, 1988, after the receiver had been appointed, the Debtor offset sums it owed Maxima against Maxima's debt, and Maxima assumed the Debtor's liability to the Davises and offset this amount against its debt to the Debtor, which reduced the Maxima's debt to the Debtor to between $200,000.00 and $300,000.00.

9. After occupancy fell in 1986, the Debtor started to aggressively market the Apartments, and occupancy rose from approximately 71% to 86% in 1988. The full impact of this increased occupancy has not made its full financial impact. At the date of the hearing, occupancy was approximately 87% and the Debtor expects occupancy to rise to 90% in 1989.

10. The Debtor lost approximately $375,000.00 in 1986 and $650,000.00 in 1987. Before the Foreclosure action, American Savings and the Debtor entered into forbearance agreements whereby the Debtor would be paid receipts above operating expenses rather than full mortgage installments. Nidlinger attempted to refinance the debt to American Savings, but was unsuccessful.

11. During the receivership of approximately 5 months, the Apartments generated sufficient income to pay operating expenses and taxes, including penalties for past due taxes, and to accumulate over $170,000.00.

12. Nidlinger prepared a cash flow projection for 1989 based on a 90% occupancy rate. The Court finds the projection to be reasonable. By Nidlinger's calculations, total income for the year would be $1,125,400.00, operating expenses would be $463,320.00, capital replacement would be $41,240.00, leaving a net income of $620,840.00 from which to service American Savings' debt. The Apartments are not in need of capital improvement at this time, but Nidlinger believes improvements such as garages and laundry facilities would increase their value and marketability.

13. According to Nidlinger, any proposed plan would not pay in full unsecured creditors, including American Savings as holder of a deficiency claim. The Debtor's limited partners may be willing to invest additional capital, but have made no commitment to do so and no amounts have been proposed. Any plan would pay American Savings the value of its collateral, and would allow the limited partners to profit from appreciation of the Apartments, if they invest new capital.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter. 28 U.S.C. section 157(b)(2)(A) and (G).

2. Lack of good faith in filing a Chapter 11 petition is adequate cause for dismissal under 11 U.S.C. section 1112(b) or for relief from stay under 11 U.S.C. section 362(d)(1). *In re Grieshop*, 63 B.R. 657, 662 (N.D.Ind.1986). To determine whether good faith exists in a given case, a court must consider all underlying facts and circumstances. *Id.* Certain factors tend to recur in cases where good faith is an issue, including:

1. The debtor has few or no unsecured creditors.
2. There has been a previous bankruptcy petition by the debtor or a related entity.
3. The pre-petition conduct of the debtor has been improper.
4. The petition effectively allows the debtor to evade court orders.
5. There are few debts to non-moving creditors.
6. The petition was filed on the eve of foreclosure.
7. The foreclosed property is the sole or major asset of the debtor.
8. The debtor has no ongoing business or employees.
9. There is no possibility of reorganization.
10. The debtor's income is not sufficient to operate.

11. There was no pressure from non-moving creditors.

12. Reorganization essentially involves the resolution of a two-party dispute.

13. A corporate debtor was formed and received title to its major assets immediately before the petition and

14. The debtor filed solely to create the automatic stay.

*Id.* at 663 ("the *Grieshop* factors"). While these may be indicia of bad faith, at least several regularly appear in bankruptcies filed in good faith. For instance, debtors often file on the eve of foreclosure on a major asset. The key is whether the debtor has a sincere desire to reorganize and some reasonable possibility of success. *See In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir.1984); *In re North Redington Beach Associates, Ltd.,* 91 B.R. 166, 169 (Bankr.M.D.Fla.1988).

■ 3. There is no evidence of the *Grieshop* factors 2, 8 and 13. The Debtor has few other creditors besides American Savings, those creditors were not pressuring the Debtor, and American Savings was moving to foreclose on the Debtor's major asset, so *Grieshop* factors 1, 5, 6, 7, 11 and 12 are present. The Court, however, finds that the presence of these factors alone would not support a finding of bad faith if the Debtor has the intention and ability to make legitimate use of the protections of bankruptcy. *Cf. Grieshop,* 63 B.R. at 664 (bad faith found when all factors but one were present).

4. There is no evidence that filing of the petition allowed the Debtor to evade court orders (*Grieshop* factor 4). While one purpose in filing, no doubt, was to secure the advantages of the automatic stay, the Court finds that the Debtor also has the intent of effectuating a plan of reorganization (*Grieshop* factor 14). Although American Savings suggests the prepetition transaction involving the reduction of the debt Maxima owed the Debtor through set-off of the Debtor's debt to Maxima and Maxima's assumption of the Debtor's debt to the Davises may be in violation of 11 U.S.C. section 553 (*Grieshop* factor 3), there does not appear to have been any

fraudulent intent involved, but rather an intent to reduce the Debtor's net monthly payments. (If section 553 was violated, a remedy less drastic than dismissal would be recovery of the setoff.)

5. The Debtor has an ongoing business and employees (*Grieshop* factor 8), and has sufficient income to operate, at least before debt service, (*Grieshop* factor 10). The major item in contention is whether there is any possibility of reorganization (*Grieshop* factor 9), which is also relevant to American Savings' motion for relief from stay.

■ 6. A party in interest is entitled to relief from the automatic stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. section 362(d). The debtor has the burden of proof on all issues except lack of equity. Section 362(g). Cause, for purposes of subparagraph (1), may include lack of good faith in filing, implicating the *Grieshop* factors. There is indisputably no equity for the Debtor in the Apartments. Although the Apartments would undoubtedly be necessary for any conceivable reorganization of the Debtor, subparagraph (2)(B) requires that there be "a reasonable possibility of a successful reorganization within a reasonable time." *See United Savings Association v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988). Whether the Apartments should be ordered abandoned under 11 U.S.C. section 554(b) as burdensome to the estate or of inconsequential value and benefit to the estate will depend on whether reorganization is reasonably possible. Thus, the motions to dismiss, for relief from stay, and for abandonment all depend on the likelihood of successful reorganization.

7. Based on Nidlinger's projections for 1989, the limited partners' willingness to consider further capital investment, and the history of the Apartments under the Receiver, the Court concludes that the Debtor has shown that there is some reasonable possibility of reorganization within a reasonable time. The Court believes that the Debtor may be able to propose a plan that will be accepted by an impaired class, that will be able to pay American Savings the value of its lien, and that will provide for capital contributions from the limited partners justifying their retention of their interest in the Debtor. American Savings' interests, of course, will be protected at the time a proposed plan is considered.

8. Because the Court concludes that there is a reasonable likelihood for expeditious reorganization of the Debtor, the Court will deny American Savings' motions to dismiss, for relief from stay, and for abandonment.

9. The Court now turns to the matter of adequate protection. The Debtor has satisfactorily shown that the Apartments are being well maintained and are not depreciating. American Savings lien interest in the Apartments is therefore already adequately protected. *See Timbers,* 108 S.Ct. at 629–30, 635. American Savings seeks adequate protection of its asserted interest in rent receipts. This issue is closely related to the issues presented in the Debtor's Motion to Use Cash Collateral, which is the subject of the interim Agreed Entry of December 19, 1988. The Court finds that American Savings' asserted interest in rent receipts is being adequately protected at this time by the Agreed Entry, and will consolidate further consideration of American Savings' motion for adequate protection of its asserted interest in rent receipts with the hearing on the Debtor's Motion to Use Cash Collateral. Such hearing will be set on the request of either party.

An order on the above findings of fact and conclusions of law will be entered separately.

ORDER DENYING MOTIONS TO DISMISS, FOR RELIEF FROM STAY AND FOR ABANDONMENT, AND DENYING IN PART AND DEFERRING RULING IN PART ON MOTION FOR ADEQUATE PROTECTION

Having this day made its findings of fact and conclusions of law on the Motion to Dismiss Bankruptcy, filed by American Savings and Loan Association ("American Savings") on November 9, 1988, and on the Motion for Relief from Stay, Adequate Protection and for Abandonment filed by American Savings on December 9, 1988, reading as follows: [H.I.]; the Court now enters its order, pursuant to Bankruptcy Rule 9021, as follows:

1. American Savings' motion to dismiss bankruptcy is DENIED,

2. American Savings' motions for relief from stay and for abandonment are DENIED,

3. American Savings' motion for adequate protection with respect to the apartment complex known as Garden Quarter Apartments is DENIED, and

4. The Court defers consideration of the remaining issues presented in American Savings' motion for adequate protection until the hearing on the Debtor's Motion to Use Cash Collateral, such hearing to be set on the request of either party.