**RCO INVESTMENT COMPANY, Appellant,**

v.

**BELAIR 301–50 S.W. QUADRANT COMMERCIAL PROPERTIES, INC., Appellee.**

**Civ. A. No. R–91–1525.**

United States District Court, D. Maryland.

Feb. 14, 1992.

Philip J. McNutt, Washington, D.C., for appellant.

Emil Hirsch, Washington, D.C., for appellee.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

Pending before the Court in the above-captioned case is an appeal by RCO Investment Company ("RCO") of the United States Bankruptcy Court's denial of its motion to dismiss, or, in the alternative, to abstain and its motion for relief from the automatic stay. Appellee, Belair 301-50 S.W. Quadrant Commercial Properties, Inc. ("Debtor"), filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on February 6, 1991. Soon thereafter, RCO moved to dismiss, or in the alternative, to abstain, and for relief from the automatic stay. After an extensive hearing on May 2, 1991, Bankruptcy Judge L. Edward Friend, II,

denied both of RCO's motions. RCO immediately appealed the order to this Court. Appellee, however, neither filed its brief nor its request for an extension of time to file for three weeks after the brief was due. On September 11, 1991, this Court denied Debtor's motion for additional time to file its brief on the merits. Consequently, the Court shall not consider appellee's brief in this appeal. Pursuant to Local Rule 105.6 (D.Md.), the Court shall rule without a hearing. For the reasons set forth below, the decision of the Bankruptcy Court to deny appellant's motions shall be reversed.

## I. FACTUAL BACKGROUND

Debtor is a Maryland corporation created for the purpose of carrying out a joint development project consisting originally of approximately 108.6 acres located at the south east intersection of U.S. Routes 50 and 301 and Maryland Route 197 in Bowie, Maryland. The property is owned by Debtor and City of Capitals, Inc. ("CofC"), a closely related corporation. Francis X. Gaegler, Jr. is an officer, director, and the sole shareholder of both Debtor and CofC. For many years, Debtor and CofC have sought to jointly develop the property, which is known as the International Renaissance Center ("IRC"). Debtor and CofC exist solely to develop the IRC, their joint asset; neither corporation owns any other property or conducts any business that is not related to the IRC.

Appellant RCO is the holder of a Deed of Trust Promissory Note in the original principal amount of $8,000,000 (the "RCO Note"). The Debtor and CofC executed the RCO Note and the deed of trust which secures it (the "RCO Trust") in December, 1984 in favor of the now defunct First Maryland Savings and Loan, Inc. ("First Maryland") in exchange for financing provided to CofC. The RCO Trust encumbers all real property owned by the Debtor and CofC. In April, 1988, RCO acquired the note from the Maryland Deposit Insurance Fund Corporation in its capacity as duly appointed receiver of First Maryland.

In April, 1983, CofC filed a voluntary petition under Chapter 11 of the Bankruptcy Code in order to stay a foreclosure on the deed of trust secured by First National Bank of Maryland. The case remained in Bankruptcy Court for approximately seven years until November, 1990, when Judge James F. Schneider ordered the dismissal of CofC's petition with prejudice. Judge Schneider cited three main reasons for the dismissal. First, CofC failed to file any confirmable plan of reorganization. Second, CofC had not paid quarterly fees to the office of the United States Trustee. Finally, CofC had failed to file monthly financial reports. In the order of dismissal, Judge Schneider concluded that the protracted delay in the bankruptcy proceedings had resulted in prejudice to creditors and proved that no reasonable likelihood of rehabilitation existed. Ultimately, the case was dismissed with prejudice to prevent a "useless repetition" of this prolonged proceeding.

Immediately upon the dismissal of CofC's petition, RCO instituted a Maryland judicial foreclosure proceeding as to all real property owned by CofC, the debtor in the prior action, and Belair, the debtor in the instant action. The foreclosure sale, which was scheduled for February 7, 1991, was stayed when the Debtor filed the bankruptcy petition at issue in the late afternoon of February 6, 1991. Also on February 6, several creditors of CofC who were closely affiliated with Gaegler and the corporation filed an involuntary petition under Chapter 11 against CofC. Judge Schneider, the presiding judge in both cases, issued a show cause order on December 12, 1991 which required Belair and CofC to show cause why the Bankruptcy Court should refrain from dismissing both the voluntary and involuntary petitions. In the Order, Judge Schneider stated, "[T]his Court does not understand why these cases should be permitted to proceed through a lengthy confirmation process when the debtors have so far failed to justify the refiling of these cases after the previous dismissal."

When the Debtor filed for bankruptcy protection, the indebtedness of the Debtor and CofC totaled $6,769,409.77. Portions of the property have been sold at tax sales in 1989 and 1990. The Debtor and CofC have made no payments to RCO since May, 1989.

The subject of this appeal is the Bankruptcy Court's May 2, 1991 denial of RCO's motion to dismiss, or, in the alternative, to abstain, and its motion for relief from the automatic stay. RCO filed these motions almost immediately after the Debtor sought Chapter 11 protection in February, 1991. Ruling from the bench, Judge Friend acknowledged that Judge Schneider's dismissal of CofC's petition was relevant to RCO's motion, but he ultimately concluded that the prior dismissal of the related action does not collaterally estop Belair's good faith bankruptcy petition. Given the close relationship between the two Debtors, CofC and Belair, he conceded that his decision not to dismiss the Debtor's petition could have implications on the integrity of the court. Judge Friend also found that under standards enunciated by the Fourth Circuit in *Carolin Corporation v. Miller*, 886 F.2d 693 (4th Cir.1989), RCO had failed to prove that the Debtor had filed its Chapter 11 case in bad faith. The Court based this conclusion primarily on the fact that Debtor had represented that approximately 18 million dollars of equity would remain in the Debtor's real property even after satisfaction of the RCO Note. In light of this fact, Judge Friend concluded that there is hope of rehabilitation for the Debtor.

On December 26, 1991, appellant filed a motion for expedited determination of appeal in order to minimize the delay and resulting prejudice caused by the Debtor's putative bad faith petition. RCO alleges that the instant bankruptcy proceedings have caused severe prejudice by delaying the realization of its collateral. Appellee opposed this motion. Appellant subsequently filed an amended motion for expedited determination of appeal.

## II. ANALYSIS

### A. Standard of Review

■ On review, a court may set aside findings of fact only if they are clearly

erroneous. Bankruptcy Rule 8013. Thus, the Court may reverse Judge Friend's findings of fact if the Court "is left with the definite and firm conviction that a mistake has been committed." *In Re Perimeter Park Invest. Associates, Ltd.*, 616 F.2d 150, 151 (5th Cir.1980). Conclusions of law, however, are subject to *de novo* review. *In Re Comer*, 723 F.2d 737, 739 (9th Cir. 1984).

### B. Requirement of "Good Faith"

The Bankruptcy Code provides that a bankruptcy court may dismiss a Chapter 11 petition "for cause." 11 U.S.C. § 1112(b). The statute defines "cause" with a non-exhaustive list of factors for the court to consider, including continuing loss or diminution of the estate and absence of a reasonable likelihood of rehabilitation (11 U.S.C. § 1112(b)(1)), inability to effectuate a plan (11 U.S.C. § 1112(b)(2)), unreasonable delay that is prejudicial to creditors (11 U.S.C. § 1112(b)(3)), or inability to effectuate substantial consummation of a confirmed plan (11 U.S.C. § 1112(b)(7)). The cause requirement for dismissal under this section is not substantively different from the cause requirement for relief from the automatic stay as provided in 11 U.S.C. § 362(d)(1). The statute states, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic] stay ..., such as by terminating, annulling, modifying, or conditioning such stay for cause ..." 11 U.S.C. § 362(d)(1). Thus, in order for Judge Friend to have granted either of RCO's motions, RCO must have introduced sufficient evidence of "cause."

▮ Although neither statute includes an express requirement of good faith, the lack of good faith in filing a petition under Chapter 11 constitutes "cause" under both § 1112(b) and § 362(d)(1). Indeed, courts have uniformly held that a Chapter 11 petition must be filed in good faith. *In Re Little Creek Development Co.*, 779 F.2d 1068 (5th Cir.1986); *In Re Grieshop*, 63 B.R. 657 (N.D.Ind.1986); *In Re Management Technology Corp.*, 54 B.R. 5, 7–8 (Bankr.N.J.1984); *Furness v. Lilienfield*, 35 B.R. 1006 (D.Md.1983). In *Furness*, Judge Young described the good faith requirement as "the policing mechanism of bankruptcy courts to make certain that those who invoke the reorganization or rehabilitation provisions of the bankruptcy law do so only to accomplish the aims and objectives of bankruptcy philosophy and policy and for no other purpose." *Furness*, 35 B.R. at 1011, citing *In Re Mogul*, 17 B.R. 680 (Bankr.M.D.Fla.1982).

The seminal case in the Fourth Circuit discussing the good faith principle is *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989). In that case, the debtor corporation was a real estate holding company with one principal asset consisting of a tract of land in Lexington, North Carolina and a large industrial building located thereon. The only secured creditor, Robert J. Miller, Jr., was the successor beneficiary of a purchase money deed of trust on the property and the successor payee under a purchase money promissory note. Carolin defaulted on the note in 1986. The foreclosure sale of the property was stayed by Carolin's Chapter 11 petition which was filed 50 minutes before foreclosure. Mr. Miller challenged the petition on the ground that Carolin had not sought Chapter 11 protection in good faith. After extensive hearings, the Bankruptcy Court dismissed Carolin's Chapter 11 case for lack of good faith in filing. The District Court affirmed the dismissal.

On appeal, the Fourth Circuit extensively analyzed the implied good faith requirement under § 1112(b). The Court agreed with the widely-accepted view that a debtor's lack of good faith in filing a Chapter 11 petition constitutes "cause" for dismissal under § 1112(b) and for relief from an automatic stay under § 362(d)(1). 886 F.2d at 698–699. The Court then articulated the standard for determining whether a Chapter 11 petition has been filed in good faith. The Court stated that a dismissal for bad faith is warranted if the creditor can prove both objective futility of reorganization and subjective bad faith by the debtor. *Id.* at 700–701. Objective futility requires that no realistic possibility of an effective reorganization exist. Subjective bad faith sug-

gests an intent by the debtor to abuse the protections of Chapter 11 and to cause hardship or delay to creditors, without any real ability to reorganize. As long as a bankruptcy court has the power to dismiss a petition at the beginning of the process and effectively deny a debtor all the protections of the Bankruptcy Code, the *Carolin* court concluded that test for this threshold requirement must necessarily be "stringent." *Id.* at 701.

In delineating the standard of proof required under this two-prong standard, the Fourth Circuit emphasized that a court must carefully consider an array of relevant factors because no one aspect of the debtor's condition is dispositive. *Id.* Assessing the debtor's objective futility requires a court to weigh the Debtor's failure to exhibit significant potential or realistic chance for rehabilitation, the number of employees, the lack of any valuable assets besides the real estate, the amount of equity in the principal asset, and the absence of other secured creditors with substantial claims. In determining whether the petition was filed with subjective bad faith, the court should focus on the debtor's purposes in filing a Chapter 11 petition and the timing of the filing.

*Carolin* incorporated the reasoning of several other courts that have examined the good faith requirement. In *In Re Little Creek Development Co.,* 779 F.2d 1068 (5th Cir.1986), the Fifth Circuit described some of the circumstances that frequently, although not always, surround the filing of a bad faith petition. The debtor usually owns only one asset, "such as a tract of undeveloped or developed real property." 779 F.2d at 1073. The asset is encumbered by liens of secured creditors. There are a few, if any, unsecured creditors who have only small claims. The debtor has few employees, little cash flow, and no available sources of income with which to reorganize or make protection payments. There may be allegations of wrongdoing by the debtor or its principals. Often, the debtor and the secured creditor have litigated related claims in state court but the debtor has been unable to forestall foreclosure or post the required bond. The

automatic stay is the debtor's last chance to prevent the loss of its property. The court in *Little Creek Development* concluded that "[r]esort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation ..." *Id.* at 1073.

Still other courts have articulated additional factors that strongly suggest the lack of good faith in filing. Often, the debtor or a related entity has previously filed a bankruptcy petition. *In Re Grieshop,* 63 B.R. 657, 662–63 (N.D.Ind.1986). The debtor filed the petition on the eve of or very shortly before foreclosure. *Id.* Non-moving creditors applied no pressure to the debtor. *Id.* The central issue in the bankruptcy matter involves a two party dispute between a secured creditor and the debtor. Frequently, it is clear that there is no realistic possibility of reorganization. *Id.*

## C.  Belair's Lack of Good Faith

■  The standards for good faith enunciated in *Carolin, Little Creek Development,* and *Grieshop* clearly govern RCO's motion to dismiss and motion for relief from the automatic stay. In determining whether the Debtor had filed for Chapter 11 protection in bad faith, Judge Friend misconstrued the rule refined in these cases and erroneously concluded that Belair had acted in good faith. The transcript of the hearing on RCO's motions reveals several significant errors in the court's construction and application of the good faith doctrine. First, Judge Friend's remarks strongly suggest that despite the clear mandate of *Carolin,* he considered only one aspect of the Debtor's condition in concluding that the Debtor had filed its petition in good faith. After hearing evidence that the IRC property was valued at approximately $18 million more than the $6 million deed of trust, the court stated, "I don't think *Carolin* would let me dismiss a case with those facts ..." On the contrary, *Carolin* clearly requires a court to consider all relevant factors of the debtor's

condition, or the "totality of circumstances," because no one factor is dispositive. 886 F.2d at 702.[1] A large equity cushion may be germane to the good faith inquiry, but it is only one of several factors that a court must weigh. Although its reasoning is somewhat murky, the Bankruptcy Court appears to have based its finding of good faith exclusively on the fact that the Debtor's property had in excess of $18 million in equity. In addition to contravening a well settled rule, the Court's reliance on this one factor is misplaced; the $18 million of equity could also explain Belair's willingness to do anything, even file a frivolous Chapter 11 petition, to stay the foreclosure.

The record also indicates that RCO offered ample evidence to prove both the objective futility of reorganization and the Debtor's subjective bad faith. Indeed, the facts of this case are remarkably similar to the paradigms of bad faith described by other courts. *See Little Creek Development, supra; Grieshop, supra.* First, the Debtor failed to show that it was objectively able to reorganize. Belair had only one asset, the IRC project, which was the object of the scheduled foreclosure. The development of the property was not an ongoing, viable business. Because the undeveloped land was not liquid, the Debtor had no resources with which to improve the property for purchase or development. Besides the members of Mr. Gaegler's immediate family, the Debtor employed only a secretary. Belair had few unsecured creditors and although there were other secured creditors, only RCO pressured the Debtor to satisfy its outstanding debt. Indeed, the dispute between Ronald Cohen and RCO on the one hand, and Francis Gaegler and Belair on the other, was the overriding conflict in the case. For several years,

RCO and Belair had litigated several claims related to the IRC project in Prince George's County Circuit Court. RCO alleged that Belair had engaged in wrongful and improper conduct before it filed for Chapter 11 protection. Perhaps most importantly, both the Debtor and CofC have been unable to advance any acceptable plan of reorganization for the IRC property since 1983.

Finally, the Bankruptcy Court had before it convincing evidence of Belair's subjective bad faith. CofC, the alter ego of the Debtor, had filed a bankruptcy petition in 1983 which was subsequently dismissed with prejudice. Belair filed for Chapter 11 protection the afternoon before the scheduled foreclosure of the IRC property. The timing of Belair's petition coupled with CofC's previous filing suggests underlying improper purposes and indicates that Belair had acted in bad faith. RCO argued to the Bankruptcy Court and in this appeal that since 1983, Belair and CofC have filed the three successive petitions[2] solely to invoke the automatic stay, prevent the foreclosure, and retain title to a very valuable asset.

This argument is supported by case law which provides that successive petitions filed by the same or closely related entities in order to avert foreclosure constitutes an abuse of the bankruptcy system and bad faith under the Code. *In Re Kinney,* 51 B.R. 840 (Bankr.C.D.Ca.1985). In *Kinney,* family members with interests in the same property filed ten bankruptcy petitions, eight of them involving the common property, in just over two years. The Bankruptcy Court determined that the family had filed eight of the petitions solely to invoke the protection of the automatic stay and prevent the impending foreclosure. After imputing the actions of each family

---

1. *See also In re Natural Land Corp.,* 825 F.2d 296, 298 (11th Cir.1987) ("[There is no] single factor that will necessarily lead to a finding of bad faith."); *In Re Kinney* 51 B.R. 840, 845 (Bankr.C.D.Ca.1985) ("[T]he Court must determine whether litigation is being pursued in good faith by considering all of the facts and circumstances before it."); *In Re Grieshop,* 63 B.R. 657 (N.D.Ind.1986); *In Re French Gardens, Ltd.,* 58 B.R. 959 (Bankr.S.D.Tex.1986).

2. Contemporaneous with the filing of Belair's voluntary petition, a group of CofC's creditors filed an involuntary petition under Chapter 11. Although Judge Friend intimated that CofC was "back in" bankruptcy, Judge Schneider dismissed CofC's voluntary petition with prejudice in November, 1990.

member to the others, the court held that the prior dismissals for lack of good faith in filing precluded any subsequent petitions filed by any other family member under the doctrine of res judicata. *Id.* at 845. Like the Kinney family, CofC and Belair held interests in the same property. Because of their alter ego relationship, much of the proceedings in CofC's 1983 Chapter 11 case involved Belair's interest in its sole asset, the IRC project; Belair was a party to the financing agreement reached in 1984, and would have been forced to sell some assets under a proposed plan of reorganization. The history of this dispute clearly indicates that CofC and Belair always acted in concert with regard to the IRC project. Consequently, the patent bad faith that warranted dismissal of CofC's voluntary petition in 1990 must be imputed to Belair. The subjective bad faith prong of the *Carolin* test is satisfied by both the timing of Belair's petition and the successive filings by Belair and CofC.

## III. CONCLUSION AND ORDER

In determining that the Debtor filed its Chapter 11 petition in good faith, the Bankruptcy Court committed reversible error in two ways. First, the Court misconstrued and misapplied the good faith standard as enunciated by the Fourth Circuit in *Carolin*. Second, in light of the considerable evidence RCO presented at the Bankruptcy Court hearing, the Court's findings of fact were clearly erroneous. The Court erred in concluding that the Debtor had the ability to reorganize and that it had not filed with subjective bad faith.

Accordingly, it is this 14th day of February, 1992, by the United States District Court for the District of Maryland,

ORDERED:

1. That the judgment of the United States Bankruptcy Court denying appellant's motion to dismiss, or, in the alternative, to abstain and its motion for relief from the automatic stay BE, and hereby IS, REVERSED; and

2. That appellant's motion to dismiss bad faith petition for cause pursuant to 11 U.S.C. § 1112(b) BE, and hereby IS, GRANTED; and

3. That appellant's motion for expedited determination of appeal, as amended, BE, and hereby IS, GRANTED.