**IN RE LJBV LTD, Debtor.**

**Bankr. 15–35961**

United States Bankruptcy Court,
N.D. Illinois, Eastern Division.

Signed January 28, 2016

Nikola Duric, Duric Law Offices, Park Ridge, IL, for Debtor.

**Amended Order on 36 Holdings, LLC's Motion to Dismiss (Dkt. No. 27)**

Jacqueline P. Cox, Judge, Northern District of Illinois Bankruptcy Court

This Chapter 11 matter is before the Court for ruling on Creditor 36 Holdings, LLC's Motion for Entry of an Order Dismissing Debtor's Chapter 11 Case ("Motion") under 11 U.S.C. § 1112(b) and Federal Rules of Bankruptcy Procedure 1017, 2002 and 9014. For the reasons noted herein, the Motion will be granted.

## I. Jurisdiction

This Court has jurisdiction to hear and determine this Motion pursuant to 28 U.S.C. § 1334(a), which provides that federal district courts have original and exclusive jurisdiction of all cases filed under the Bankruptcy Code, title 11 of the United States Code ("Bankruptcy Code"). 28 U.S.C. § 157(a) allows the district courts to refer title 11 cases to the bankruptcy judges for their districts. The District Court for the Northern District of Illinois has promulgated Internal Operating Procedure 15(a), which refers its bankruptcy cases to the judges of this court.

This matter is a core proceeding in which this Court may enter a final order pursuant to 28 U.S.C. § 157(b)(2)(A), which governs matters concerning the administration of a bankruptcy estate.

## II. Facts and Background

The Debtor LJBV LTD ("LJBV") and a separate entity, EHC, LLC ("EHC") (a debtor in bankruptcy cases 15–35952 and 15–40866) are co-obligors on promissory notes secured by separate mortgages on two commercial properties. 36 Holdings, LLC ("36 Holdings") claims to hold this debt upon assignment from Lakeside Bank. The attorney for LJBV argued at the January 7, 2016 hearing of this matter that 36 Holdings was formed as an entity after Lakeside Bank assigned the note/mortgage, essentially suggesting that the assignment may not be valid. If this issue is in dispute it can be litigated and resolved in the mortgage foreclosure case pending in state court. The interlocutory receiver order was immediately appealable under Illinois Supreme Court Rule 307(a)(2) which provides:

(a) **Orders Appealable; Time.** An appeal may be taken to the Appellate Court from an interlocutory order of court:

(2) appointing or refusing to appoint a receiver or sequestrator.

Illinois Supreme Court Rule 307(a)(2).

That same attorney did not dispute that the debt matured in 2014 and that the Debtor is in default.

When the Court asked the Debtor's attorney why the Debtor defaulted on its obligation to make mortgage payments at a hearing on January 21, 2016, the question was not answered.

The foreclosure case was filed on June 22, 2015. On June 26, 2015, 36 Holdings sought by motion the appointment of a receiver. Apparently the defendants in the foreclosure case filed six successive motions for substitution of judge as of right pursuant to 735 ILCS 5/2–1001(a)(2). The receiver motion was eventually granted; the receiver order was entered on October 22, 2015 at 12:30 p.m. According to 36 Holdings, both EHC and LJBV filed bankruptcy cases that day at 2:30 p.m. before the receiver could take possession of the properties. Court records show that case number 15–35952, EHC's case, was filed on 10–22–15 at 3:30 p.m. and that case number 15–35961, LJBV's case, was filed on 10–22–15 at 4:02 p.m.

The Debtor is a single-asset real estate concern whose sole business is the ownership and operation of a commercial building at 1244–1256 Rand Road, Des Plaines, Illinois. According to a late-filed Schedule G of Executory Contracts and Unexpired Leases, the building has four tenants. Generally, schedules are due at filing or 14 days later pursuant to Federal Rule of Bankruptcy Procedure 1007(c). The Debtor's Schedule G was filed on November 16, 2015, along with several other schedules, more than 14 days after the October 22, 2015 filing date. The Debtor has not sought leave of court to file any of its schedules past the due date as required by Federal Rule of Bankruptcy Procedure 1007(c). Its Schedule A—Real Property discloses that the property is subject to a secured claim of $1,322,750, when it came out in court that it secures a debt of approximately $5,744,000.

The Debtor is owned by Marlene Vogel. The Court was told at the January 7, 2016 hearing that she received distributions in the amount of $195,000 in the year before this case was filed when, except for the secured debt noted herein, the Debtor owed relatively modest unsecured debts – $40,364.28 for real estate taxes and other unsecured debt of only $8,675.46 according to Schedule E—Creditors Holding Unsecured Priority Claims and Schedule F—Creditors Holding Unsecured Nonpriority Claims.

The Debtor's Response to the Motion discusses the impropriety of the state

court appointment of a Mr. Shapiro as receiver and the improper conduct of a Mr. DeGraf in objecting to a sale of the collateral in a conversation with a prospective purchaser. Apparently that sale was due to close in December 2015 even though no motion to sell property of the bankruptcy estate had been filed in the bankruptcy cases until January 20, 2016 in EHC's refiled bankruptcy case number 15–40866. EHC's first case was dismissed on November 25, 2015 on 36 Holdings' motion. The dismissal order explained that EHC had not yet filed a complete set of schedules or a completed statement of financial affairs and that it had not sought leave of court to use cash collateral, rental payments collected from tenants. *See* Bankruptcy Case 15–36952, Order at Docket Number 26. Mr. Degraf's conduct is the subject of Adversary Proceeding 15–00917. Movant 36 Holdings' position is that the Debtor's preoccupation with what happened in state court means that this case was filed in bad faith.

## III. Discussion

The relevant case law can be found at § 1112(b)(1) of the Bankruptcy Code, which provides:

Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).

"Although section 1112(b) does not explicitly provide that the lack of good faith may constitute cause, section 1129(a)(3) does require that plans be 'proposed in good faith'; courts have sensibly considered bad faith to be an acceptable basis for conversion or dismissal." *In re Jartran, Inc.*, 886 F.2d 859, 867 (7th Cir. 1989). "A § 1112(b)(2) dismissal is 'proper if the court determines that it is unreasonable to expect that a plan can be confirmed in the [C]hapter 11 case.'" *Matter of Woodbrook Assoc.*, 19 F.3d 312, 316 (7th Cir.1994). Good faith is recognized as a prerequisite for eligibility to file a chapter 11 case and lack of good faith may constitute "cause" for dismissal of a case under § 1112(b) of the Bankruptcy Code. *In re Madison Hotel Associates*, 749 F.2d 410, 426 (7th Cir.1984).

Bankruptcy Code Section 1112(b)(4) provides a non-exclusive list of grounds which may constitute cause for dismissal or conversion including the unexcused failure to satisfy timely any filing or reporting requirement. 11 U.S.C. § 1112(b)(4)(F).

In *In re Tekena USA, LLC*, 419 B.R. 341, 345–46 (Bankr.N.D.Ill.2009), this Court noted the following factors to determine whether cause exists to dismiss a chapter 11 case.

(1) whether the debtor has few or no unsecured creditors; (2) whether there has been previous bankruptcy filings by the debtor; (3) whether the pre-petition conduct of the debtor has been improper; (4) whether the petition effectively allows the debtor to evade court orders; (5) whether there are few debts to non-moving creditors; (6) whether the petition was filed on the eve of foreclosure; (7) whether the foreclosed property is the sole or major asset of the debtor; (8) whether the debtor has no ongoing business or employees; (9) whether there is no possibility of reorganization; (10) whether the debtor's income is not sufficient to operate; (11) whether there was no pressure from non-moving creditors;

(12) whether reorganization essentially involves the resolution of a two-party dispute; (13) whether a corporate debtor was formed and received title to its major assets immediately before the petition and; (14) whether the debtor filed solely to create the automatic stay.

*Id.* at 345–46 (citing *In re Grieshop*, 63 B.R. 657, 663 (N.D.Ind.1986)).

■ The movant bears the initial burden to establish cause under section 1112(b). *Woodbrook*, 19 F.3d at 317. That burden must be established by a preponderance of the evidence. *In re Draiman*, 450 B.R. 777, 826 (Bankr. N.D.Ill.2011). Once a movant has established cause, the burden then shifts to the debtor to establish one of the exceptions enumerated in section 1112(b)(2). *Id.* at 826.

Section 1112(b)(2) provides that a debtor may avoid dismissal "if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that:

(A) there is a reasonable likelihood that a plan will be confirmed within the time frames established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court."

11 U.S.C. § 1112(b)(2)(A)-(B); *In re Draiman*, at 826.

### III. Findings

■ Based on the record of the hearing of the Motion, the Court finds that the Debtor has few unsecured creditors: a relatively modest tax claim and a very small amount of unsecured debt. The court also finds that the petition effectively allows the Debtor to evade the state court order appointing a receiver.

The Debtor is preoccupied with trying to convince this Court that the person appointed receiver has a conflict of interest of some sort. That kind of issue should be raised and resolved in state court. This Court does not sit as a court of review regarding that issue. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), where the Supreme Court ruled that lower federal courts have no power to sit in direct review of state court decisions.

The Court finds that this bankruptcy case was filed on the eve of foreclosure and that the property in issue is the sole asset of the Debtor. The Debtor has an ongoing business managing its property but has no employees. The Court finds that the Debtor hopes to sell its property in bankruptcy court to control who ultimately obtains it and to do so with less interference from 36 Holdings because that secured creditor wants to obtain title to its collateral.

The Debtor initially scheduled monthly rental income of approximately $39,000; it later reported monthly rental income of $31,000, which issue has been raised by 36 Holdings in opposition to a motion to use cash collateral, suggesting that Debtor's insider's rent was reduced from $8,000 a month to $500 a month. The Debtor's

agent, a Mr. Rothstein, testified at the Section 341 Creditor's Meeting that an insider tenant was charged $500 rent each month when the leased space was worth $8,000 to $10,000 a month to make up for a time when the tenant paid between $20,000 to $25,000 a month for the space. He said that the rent was lowered to reflect the tenant's unspecified financial condition. No explanation has been offered to justify setting rent according to a tenant's financial condition rather than at an amount that fairly compensates the lessor.

The Court notes that this case involves essentially the resolution of a two-party dispute and finds that this case was filed only to benefit from the automatic stay to evade state court orders.

Creditor 36 Holdings has established cause to dismiss. The burden now shifts to the Debtor to establish one of the exceptions to dismissal enumerated in § 1112(b).

The Debtor has not done so. The Debtor wants to sell its property in bankruptcy while filing many incomplete and vague documents and schedules just to avoid the state court proceeding. The Debtor can sell the property in issue before its creditor obtains title in the foreclosure case. The secured debt is approximately $6 Million; the Debtor claims to have a buyer willing to pay $6 Million for it. Nothing prohibits such a sale from proceeding outside bankruptcy during the course of the state court foreclosure action. In each situation secured creditors can make credit bids. What real difference is there between the two judicial proceedings if all a debtor really wants is to sell the collateral? The Debtor's attorney expresses utter contempt for the possibility that the secured lender may acquire the property at issue through the foreclosure case. This is not a valid reason to proceed in bankruptcy. This court's processes are designed to preserve enterprise value and to give deserving debtors a fresh start; neither purpose is implicated herein.

■ Reorganization plans have to be proposed in good faith pursuant to 11 U.S.C. § 1129(a)(3). Good faith generally means that there exists a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code. *In re Multiut Corp.*, 449 B.R. 323, 341 (Bankr. N.D.Ill.2011) ("To be in good faith, a plan must have a true purpose and fact-based hope of either preserving [a] going concern or maximizing property available to satisfy creditors.") (internal quotation marks and citations omitted). In determining whether a petition has been filed in good faith, courts have discretion to take a look at considerations that would normally arise later at plan confirmation. *Matter of Love*, 957 F.2d 1350, 1361 (7th Cir.1992).

■ A test for determining whether a debtor has filed a chapter 11 case in good faith focuses on the Bankruptcy Code's effect on a judgment creditor's nonbankruptcy collection rights and the debtor's motive for impeding those rights. *In re Liptak*, 304 B.R. 820, 836 (Bankr.N.D.Ill. 2004) ("If the debtor's only purpose for filing the case is to delay (or defeat) a single judgment creditor, and the case has little or no ability to benefit the creditor body as a whole, then the debtor has not filed the Chapter 11 in good faith."). The goal of selling bankruptcy estate assets should be to maximize the assets' selling price, not to control who obtains the assets. The Debtor appears to be concerned only with who obtains the assets, which informs this Court that this case may be a dodge of the state court foreclosure action. A debtor's primary purpose for pursuing bankruptcy relief should be to benefit its creditors. This debtor's purpose, however, is to forum-shop.

## IV. Conclusion

Chapter 11 Bankruptcy Case 15–35961 is dismissed for cause under 11 U.S.C. § 1112(b).